1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN WESLEY WILLIAMS,

11          Plaintiff,                    No. CIV S-07-2385 WBS GGH P

12      vs.

13   J. WALKER, et al.,

14          Defendants.                   ORDER

15   _____/

16          Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

17   1983.[1]  Pending before the court are: 1) plaintiff's motion to compel, filed on 3/13/09 (# 35), to

18   which defendants filed their opposition, on 3/30/09 (Docket #37), after which plaintiff filed a

19   reply on 4/17/09 (# 44); 2) plaintiff's motion to compel, filed on 3/20/09 (# 36), which

20   defendants opposed on 3/30/09 (#38); 3) plaintiff's motion for leave to file a second amended

21   complaint and proposed second amended complaint, filed on 4/03/09 (# 40), to which defendants

22   filed their opposition, on 4/24/09 (# 46), after which plaintiff filed a reply, on 5/11/09 (# 48); 4)

23   plaintiff's motion for leave to propound additional discovery requests, filed on 4/09/09 (# 41), to

24   _____

25          [1] This case (formerly FCD CMK P), along with Campbell v. CDCR, Case No. CIV-S-07-
     1419 WBS GGH P (formerly MCE KJM P), has been related to, but not consolidated with,
26   Jackson v. Walker, Case No. S-06-2023 WBS GGH P.  See Order, filed on 6/06/08 (Docket #
     17).

1  which defendants filed their opposition, on 4/24/09 (# 45), to which plaintiff filed a reply, on

2  5/08/09 (# 47).

3  Complaint

4        Plaintiff alleges, in his complaint, filed on November 6, 2007, that while housed

5  at California State Prison - Sacramento (CSPS), his Eighth Amendment rights were violated by

6  the following eleven defendants: Wardens J. Walker and J. Malfi;[2] Correctional Captain D.

7  Leiber; Health Care Manager Karen Kelly; Business Services Manager Haythorne; Assistant

8  Food Manager Hague; three Supervising Cooks II: Rodriguez, Ruller (originally misspelled by

9  plaintiff as Rueller) and Arndt (misspelled by plaintiff as Arnt); two Correctional Cooks I

10  Bernardino (mis-identified by plaintiff as Raymond) and Alice Smith.  Complaint, pp. 2-5, 21.

11  All defendants are expressly sued in their individual and official capacities. Id., at 2-5.

12  Plaintiff claims that all eleven defendants have implemented a policy/procedure of feeding

13  inmates in their assigned cells as a safety/security measure.  Id., at 5-6.

14        Although plaintiff notes that he did not arrive at CSPS until December 7, 2004, he

15  claims that defendants Haythorne, Hague, Rodriguez, Ruller and Arndt have been made

16  personally aware, through "dozens of inmate complaints," of unsanitary food conditions and

17  handling by prison staff since January 9, 2003, such as the rat/rodent nesting and mating in the

18

19      [2] Confusingly, plaintiff identifies both Walker and Malfi as current wardens of CSPS. Defendant Malfi is unserved.  The initial summons/service of process form was mailed to him on 3/31/08, re-mailed on 4/10/08, and returned and filed, on 2/20/09, as unexecuted with the

20  notation "retired - no info in CDC locator."  Docket # 31.  On 3/20/09, the court directed plaintiff to provide additional information about the defendant in order for him to be served and, upon the

21  return of the requisite documents, again directed service upon defendant Malfi, by Order, filed on 4/13/09; in that order, plaintiff was informed that he could seek judicial intervention if the

22  information he sought about the defendant's whereabouts was denied or unreasonably delayed, but plaintiff did not seek the court's assistance.  Docket # 33, # 34, # 42.  On June 23, 2009, a

23  waiver was returned unexecuted once more with the notation "per office of legal affairs, Defendant out of country and unavail. to reach."  Docket # 49.  At this time, plaintiff must show

24  good cause, within 21 days, why this defendant should not be dismissed.  See, Fed. R. Civ. P. 4(m).  Although Fed. R. Civ. P. 4(f) is applicable to service of an individual in a foreign country,

25  as no information has been provided as to the possible location of defendant Malfi; for example, there is no verification that he is, in fact, in a foreign country and for how long, and the

26  applicable rules of service within such country.

main kitchen, but have only addressed this issue by the use of "stick[y] traps." Id., at 5-7.  These defendants have issued repeated memoranda addressing prison staff throwing bread racks used for transporting food trays on the floor and then stacking them more than three high to expedite food service to inmates.  Id., at 7.  In addition the carts used for food service are also used for sheet exchange, transporting bed mattresses, personal property and housing unit supplies, and defendants do not enforce any health and safety standards to make sure the carts are properly cleaned before use in food transport.  Id.

Plaintiff avers that various inmates have filed inmate appeals on the subject of food service practices; he states that an appeal by an inmate named Jackson, CDC # J-43666, revealed that correctional officials had allowed/authorized inmates to handle food who were not medically cleared to do so – a later appeal by this inmate, Jackson, concerning deficient food health and safety standards were denied.  Complaint, pp. 7-8.  Plaintiff alleges that inmates Henry, CDC #P-64498,[3] and Douglas, CDC # H-533369, assigned to jobs in the main kitchen in December of 2005, from 4:00 a.m. to 11:30 a.m. discovered both dead and living rats in the main kitchen, with the dead ones caught in sticky traps.  Id., at 8.  In January of 2006, inmate Douglas told plaintiff about the rat/rodent infestation in the main kitchen and their access to food stored in the dry goods room and prepared food left out to cool overnight, advised him not to eat certain foods and stated that he was being treated medically for what a doctor had told him was a result of food poisoning from food he ate while working in the main kitchen.  Id., at 9.

In February of 2006, an inmate named Wright, CDC # J-67360, according to plaintiff, was treated for a severe case of food poisoning after consuming an evening meal, and thereafter discovered numerous instances of other CSPS inmates who had been, or were being, treated for "exposure to food poisoning."  Complaint, p. 9.  Wright initiated a "class action group inmate appeal," seeking the extermination of all rodents from the main kitchen, which appeal

---

[3] Plaintiff is apparently referencing a document not included within his motion but attached to his complaint as Exh. H at p. 66.

was "obstructed, ignored and denied" as a result of defendant Walker's failure to protect the health and safety of CSPS inmates.  Id.

Plaintiff alleges that, on Feb. 17, 2006, he was diagnosed and treated for food poisoning as a result of an evening meal.  Complaint, p. 9.  Plaintiff alleges that two weeks earlier a registered nurse, named J. Cunningham (not a defendant), had examined plaintiff's symptoms at that time and had recommended treatment "contrary to the prison[']s doctor."  Id., at 9-10.  Plaintiff also claims (although it is unclear whether plaintiff is referring to Feb. 17, 2006, or two weeks earlier) that the prison doctor, Dr. Duc (not a defendant), had warned plaintiff about the CSPS food service food and told plaintiff that he had treated a high number of food poisoning cases at CSPS and that the food service program needed to be "upgraded."  Id., at 10.

Plaintiff claims that he filed an inmate appeal on March 2, 2006, related to the issues raised herein and during his April 14, 2006, interview with defendant Rodriguez was asked by this defendant to withdraw the appeal because he had the main kitchen rodent problem under control.  Complaint, p. 10.  He also said that in his 15 years in the food service department at CSPS, there had always been rats/rodents in the main kitchen, which are controlled by sticky traps.  Id.  Plaintiff asked how defendant Rodriguez could purport to have the problem under control when, on March 24, 2006, rodent feces and bitemarks had been discovered in up to a dozen sheets of iced cake left out to cool the evening before, which incident defendant Rodriguez denied, despite the declaration by a correctional cook I, Cronjager (not a defendant), who had personally reported the incident to her supervisor, defendant Rodriguez.  Id. & Exhibit G.

Plaintiff claims that inmate Henry, referenced above, reported to his supervisors on March 4, 2006, that a rat/rodent came into direct contact with his boot.  Complaint, p. 11. Among the exhibits plaintiff has appended to his complaint is a group appeal, Log No. SAC 06-00957, filed on April 3, 2006, complaining of "ongoing unsanitary food service at CSP-Sacramento," specifying a dinner tray having been served with hair in it, but also complaining of

various deficiencies in food handling, partially granted at the second level and denied at the

director's level.  Complaint, Exhibit O,  pp. 83-91.  (However, this appeal does not appear to

have plaintiff's name on it anywhere).  Plaintiff goes on to set forth his unsuccessful efforts to

obtain relief by way of contacting the American Civil Liberties Union, filing of a grand jury

complaint in Sacramento County, writing Senator Dianne Feinstein, writing the state Department

of Health Services, writing Kerry McClelland of the Office of the Inspector General, writing

"defendant" Woodford,[4] and writing defendant Walker.  Id., at 11-13.  Plaintiff also complains

that defendants Walker, Malfi, Leiber and Kelly have been deliberately indifferent to a

substantial risk of harm to plaintiff, have subjected him to unconstitutional conditions of

confinement by their cell feeding practices and procedures, resulting in the food poisoning of

plaintiff and others, and have been obstructive, ignored and denied the issues raised.  Id., at 13-

14.

        Plaintiff contends that defendant Leiber has been put on notice of the defective

food service and has denied each inmate appeal addressing the issue.   Complaint, pp. 15-16.

Plaintiff contends that a July 13, 2006, meeting between the C-facility Men's Advisory Council

and defendants Leiber, Haythorne, and Hague, defendants offered "a sophisticated justification

for the high number of inmate food poisoning cases at CSPS," but defendant Hague admitted that

she had seen subordinates stack bread racks during food service and so informed defendant

Leiber; she also advised Leiber that CSPS staff would only adhere to health and safety standards

in food service when supervised.  Id., at 16-17.

        Plaintiff contends that rodent infestation continues throughout the C-facility main

kitchen and is not a sudden or temporary invasion and defendant Leiber has done nothing to

_____

        [4] Plaintiff sporadically denominates Woodford as a defendant, but he failed to identify
this individual as a defendant when enumerating the parties to this complaint.  Judge Kellison,
the magistrate judge from whom this case was reassigned, did not direct service of this complaint
upon that individual and the court does not recognize this person as a properly named [or served]
defendant in this action.  See, Orders, filed on 1/08/09 (# 7), and on 3/27/09 (# 10).

correct the matters complained of.  Complaint, pp. 17-18.  Defendant Malfi assigned plaintiff's

mother's citizen's complaint about the food conditions to a Lieutenant Flint (not a defendant),

who did contact his mother, Flora Lee, by phone, but the investigation has been obstructed and

defendant Leiber has not provided her with a written response because of the instant lawsuit.  Id.,

at 18.  Plaintiff, assigned as of June 14, 2006, through August 11, 2006, as a "butcher's helper"

in the CSPS main kitchen, had a conversation with his direct supervisor, non-defendant D.S.

Abellon, along with inmate Jackson (referenced earlier), and Abellon admitted there was a rodent

infestation there and that it would take a complete fumigation to eliminate the rats/rodents.[5]  Id.,

at 18-19.   Plaintiff mailed defendant Malfi a "confidential notice" about the conditions

complained of on around August 6, 2006, which was ignored.  Id., at 19.  Defendants Smith and

Raymond (actually, Bernardino) were amply apprised of the issues raised herein and refused to

enforce health and safety standards in violation of plaintiff's Eighth Amendment rights.  Id.

Plaintiff also alleges that these defendants are obligated to uphold state health and safety

standards, listing code sections.  Id.  In addition to his claims of a violation of his Eighth

Amendment rights against all defendants, plaintiff alleges a claim of retaliation by defendant

Hague for the filing of this action in the form of a "bogus and false rules violation

report...charging plaintiff with over-familiarity."  Id., at 21, 24.  Plaintiff seeks declaratory and

injunctive relief,[6] as well as money, including punitive, damages.  Id., at 22-23.

---

[5] Plaintiff is apparently referencing a document that appears to be a copy of a declaration by D.S. Abellon, not included with the motion, but appended to plaintiff's complaint as Exh. S at p. 106.

[6] It appears that plaintiff's claims for injunctive relief could arguably found to be mooted, as the allegations of this complaint are regarding claimed conditions at California State Prison-Sacramento (CSPS), and at the time of filing this complaint, on Nov. 6, 2007, plaintiff was housed at California State Prison-Los Angeles, and as of August 28, 2009, plaintiff has evidently been incarcerated at Kern Valley State Prison.  See Sample v. Borg, 870 F.2d 563 (9th Cir. 1989); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986)(claims by a prisoner for injunctive relief concerning an institution at which he is no longer incarcerated and for which there is no "reasonable expectation nor demonstrated probability" of his return become moot. See also Reimers v. Oregon, 863 F.2d 630, 632 (9th Cir. 1988)).  However, defendants have not moved for dismissal of the injunctive relief claims, that is, for dismissal of plaintiff's claims

Motion for Leave to Amend

Plaintiff seeks leave to file a second amended complaint; however, in doing so, he has failed to submit an appropriate separate motion to accompany his proposed second amended complaint.  By failing to file a motion in accordance with Fed. R. Civ. P. 7(b)(1)(B), he "fails to state with particularity the grounds for seeking the order."  Thus, the court must review the proposed second amended complaint in order to discern the basis for any amendment.  In the proposed second amended complaint, which the court will construe in part as a motion to amend, plaintiff seeks to name three additional defendants: the California Department of Corrections and Rehabilitation (CDCR); Director of CDCR Adult Institutions Susan Hubbard; Chief of Inmate Appeals Nola Grannis (whom plaintiff describes as "Chief Correctional Administrator for the CDCR").  Motion to Amend (MTA), pp. 1-3.

The Federal Rules of Civil Procedure provide that a party may amend his or her pleading "once as a matter of course at any time before a responsive pleading is served."  Fed. R. Civ. P. 15(a).  However, as in the instant case, once an answer has been filed, a party may amend a pleading only by leave of court or by written consent of the adverse party.  See Rule 15(a)(2).  Although "[t]he court should freely give leave when justice so requires," under Rule 15(a)(2), and there is presumption in favor of granting leave to amend, such leave need not be granted where such amendment (1) would prejudice the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile.  Eminence Capital LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003), citing Foman v. Davis, 371 U.S. 178, 83 S. Ct. 227 (1962); Amerisource Bergen Corp. v. Dialysist West, Inc.,465 F.3d 946, 951 (9th Cir. 2006).  This circuit accords the greatest weight to "the consideration of prejudice to the opposing party," the prejudice-showing burden resting on the opposing party.  Eminence Capital, 316 F.3d at 1052.  "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a

against the defendants in their official capacity; thus, for purposes of these pending motions, the injunctive relief claims remain.

1   *presumption* under Rule 15(a) in favor of granting leave to amend." Id. [Emphasis in original].

2   However, in the first place in this instance, plaintiff is barred from proceeding

3   upon his claims against the entity, CDCR, by the Eleventh Amendment.  The Eleventh

4   Amendment serves as a jurisdictional bar to suits brought by private parties against a state or

5   state agency unless the state or the agency consents to such suit.  See Quern v. Jordan, 440 U.S.

6   332 (1979); Alabama v. Pugh, 438 U.S. 781 (1978)( per curiam); Jackson v. Hayakawa, 682 F.2d

7   1344, 1349-50 (9th Cir. 1982).  As the State of California has by no means consented to suit,

8   plaintiff's claims against CDCR are frivolous, thus, leave to amend to name this defendant

9   should not be granted.

10   As to defendants Hubbard and Grannis, plaintiff seeks to sue these individuals in

11   both their individual and official capacities.  As to his claims against these individuals in their

12   official capacities, it is likely that plaintiff's injunctive relief claims regarding food safety

13   standards at CSPS will ultimately be dismissed as moot (see fn. 6), thus, his official capacity

14   claims against these defendants do not appear viable.  Moreover, plaintiff fails to explain why he

15   failed to allege the involvement of the newly named defendants when he filed the original

16   complaint, since, as defendants note, their alleged involvement occurred before the plaintiff filed

17   this lawsuit.  Opposition (Opp., p. 2).  Plaintiff's effort to explain the default on the basis that he

18   had originally been proceeding in a separate action is not persuasive.  Reply, p. 4.

19   To the extent he seeks to sue defendant Hubbard in an individual capacity,

20   plaintiff does not frame a claim against her by simply alleging that she, among the litany of other

21   defendants he lists, had personal awareness of various inmate complaints about CSPS' allegedly

22   deficient health and safety standards.  MTA, p. 7.  Nor does plaintiff allege sufficient claims by

23   simply pointing out that this defendant has certain responsibilities regarding the formulation and

24   implementation of departmental policies and regulations.  MTA, p. 19, Exhibit (Exh.) L, p. 114.

25   To the extent, in his reply, he seeks to implicate both CDCR and Hubbard for implementation of

26   a cell-feeding policy at CSPS, his allegations that this practice constituted cruel and unusual

1  punishment or deliberate indifference because the procedure permitted health and safety

2  violations is too sweeping and unsupported to state a claim.  Reply, p. 7.

3                    The Civil Rights Act under which this action was filed provides as follows:

4                    Every person who, under color of [state law] . . . subjects, or causes
                     to be subjected, any citizen of the United States . . . to the
5                    deprivation of any rights, privileges, or immunities secured by the
                     Constitution . . . shall be liable to the party injured in an action at
6                    law, suit in equity, or other proper proceeding for redress.

7  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

8  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

9  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

10  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

11  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

12  omits to perform an act which he is legally required to do that causes the deprivation of which

13  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

14                    Moreover, supervisory personnel are generally not liable under § 1983 for the

15  actions of their employees under a theory of respondeat superior and, therefore, when a named

16  defendant holds a supervisorial position, the causal link between him and the claimed

17  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

18  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S.

19  941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel

20  in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

21  Cir. 1982).  Plaintiff alleges no colorable claims against defendant Hubbard.

22                    With regard to defendant Grannis, whom he seeks to also sue in an individual

23  capacity and for whom he includes an exhibit of her duty statement in her capacity as chief of

24  inmate appeals, plaintiff seeks to implicate her for having frustrated his appeal efforts which

25  helped ensure "defendant Hague's code of silence retaliation" and fostered "the infamous code of

26  silence by permitting defendant[s'] Walker and Malfi to deny and deprive" plaintiff of

1  documents that supported his appeals to the director's level regarding the food health and safety

2  conditions at CSPS.  MTA, p. 19,  Exh. M, p. 115.  Plaintiff also alleges that defendant Grannis

3  allowed subordinates to review his appeals (and exhibits) "in a manner contrary to the CDCR's

4  DOM" in order to conceal the alleged Eighth Amendment violations of CSPS' food service.  Id.,

5  at 19.

6           Plaintiff is informed that prisoners do not have a "separate constitutional

7  entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860

8  (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Even the non-

9  existence of, or the failure of prison officials to properly implement, an administrative appeals

10 process within the prison system does not raise constitutional concerns.  Mann v. Adams, 855

11 F.2d at 640.  See also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932

12 F.2d 728 (8th Cir. 1991).  Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison]

13 grievance procedure is a procedural right only, it does not confer any substantive right upon the

14 inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural

15 protections envisioned by the fourteenth amendment").  Specifically, a failure to process a

16 grievance does not state a constitutional violation.  Buckley, supra.  State regulations give rise to

17 a liberty interest protected by the Due Process Clause of the federal constitution only if those

18 regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on

19 the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472,

20 484, 115 S. Ct. 2293, 2300 (1995).[7]  Plaintiff's claims against defendant Grannis are not

21

22          [7]  "[W]e recognize that States may under certain circumstances create liberty interests
   which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S.
23 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to
   freedom from restraint which, while not exceeding the sentence in such an unexpected manner as
24 to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones,
   445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington, 494
25 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic
   drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the
26 ordinary incidents of prison life." Sandin v. Conner, supra.

sufficiently cognizable and plaintiff should not be permitted to amend to frame allegations against her.

Defendants point out that plaintiff in seeking to amend the complaint to name Hubbard and Grannis as new defendants for having "omitted to perform duties legally required by condoning, thereby acting in concert" with the other defendants is not sufficient.  Opp., p. 5, citing MTA, ¶ 53.  There is an absence of specific facts alleged to support the allegations.  Defendants sued in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; known of the violations and failed to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations.  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989).  "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v. Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980).  "Without proximate cause, there is no § 1983 liability."  Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

The court agrees with defendants that to the extent plaintiff wishes to add new facts in support of his claims of retaliation and deliberate indifference against the existing defendants, he is not limited to the pleadings in order to do so.   Opp., p. 2.   The court finds that leave to further amend in this instance should not be granted because the factors to be evaluated weigh against it. There is no question that further amendment would prejudice not only the opposing party, but also unduly burden this already significantly burdened court, and would certainly produce an undue delay in this litigation which has entered its third year, and, while leave to further amend may not be sought in bad faith, it appears that the proposed amendments are futile.  Eminence Capital LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  The

1  motion for leave to amend to proceed upon a second amended complaint will be denied.

2  First Motion to Compel

3          Plaintiff moves for an order compelling defendants Walker, Haythorne, Leiber,

4  Hague and Ruller to respond to his various requests for production.  First Motion to Compel

5  (MTC), pp. 1-2.  Plaintiff contends that each of these defendants have been evasive and

6  incomplete in their responses.  Id., at 2.  Plaintiff argues that the defendants have invoked the

7  official information privilege without a sufficient basis, have asserted privacy rights under state

8  law that are governed by federal law that are outweighed by plaintiff's need for information and

9  that he is entitled to all relevant information.  Id., at 5-6.

10         Defendants argue that federal common law recognizes that a qualified official

11 information privilege and government personnel files are considered official information, citing

12 Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990).  Opposition (Opp.), p. 3.

13 Defendants further argue that of the 125 production requests plaintiff propounded upon

14 defendants, only sixteen were not responded to on the basis of the objections asserted.  Id., at 4.

15 Nevertheless, defendants contend, plaintiff seeks further responses to ninety-nine requests,

16 despite the fact that as to eighty-three of these responses, defendant have produced documents or

17 asserted an inability to comply as they had no responsive documents within their possession,

18 custody or control.  Id.

19         Plaintiff responds that with regard to the requests at issue, at least with respect to

20 defendant Walker, that this defendant has failed to provide a privilege log or abide by the

21 requisite procedures for asserting the official information privilege.  Reply, pp. 4-5.  As to the

22 RFPs at issue directed to defendants Haythorne, Leiber, Hague and Ruller, plaintiff asks that they

23 be required to provide "a verified statement" from an employee in a position to know that "after a

24 diligent search," no responsive documents could be found.  Id., at 5-8.

25         "The governmental privilege must be formally asserted and delineated in order to

26 be raised properly."  Kerr v. U.S. Dist. Court for the No. Dist. of California, 511 F.2d 192, 198

(9th Cir. 1975).

> "There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer... "

Kerr, supra, at 198 (quoting United States v. Reynolds, 345 U.S. 1, 7-8,  73 S. Ct. 528, 532 (1953)).  The procedural prerequisites apply to all forms of "executive" privilege.  See, e.g.,Yang v. Reno, 157 F.R.D. 625, 632 (M.D.Pa. 1994) (state secrets and deliberative process privileges); Martin v. Albany Business Journal, Inc., 780 F. Supp. 927, 932 (N.D.N.Y. 1992) (finding "informant's privilege" to be a governmental privilege).  The claim should be made by a person in an executive policy position.  See Reynolds, 345 U.S. at 8 n. 20, 73 S. Ct. at 532 n. 20 ("The essential matter is that the decision to object should be taken by the minister who is the political head of the department, and that he [or she] should have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced . . .");  (see also, Kerr, supra, at 198) (denying mandamus petition brought by California Adult Authority executive personnel for district court to vacate discovery order); (see also, Scott Paper Co. v. United States, 943 F. Supp. 501-03 (E.D. Pa. 1996) (requiring IRS Commissioner to invoke deliberative process privilege); Yang, 157 F.R.D. at 632-34 & n.4 (1994) (considering official status necessary to invoke privilege, collecting cases, and finding executive secretary of National Security Council could not invoke governmental privileges); Mobil Oil Corp. v. Department of Energy, 102 F.R.D. 1, 6 (D.C.N.Y. 1983) (official invoking the privilege may be an agency head or a subordinate with high authority).  Some jurisdictions do not allow the agency head to delegate the authority to claim the privilege.  Scott, 943 F. Supp. at 502.  Other jurisdictions which allow the authority to be delegated require the delegation to be accompanied by detailed guidelines regarding the use of the privilege.  Id. at 503.  For purposes of prisoner litigation, the warden, assistant warden or appropriately delegated prison officials should be sufficient.

\\\\\

Regardless of who invokes the privilege, "the information for which the privilege is claimed must be specified, *with an explanation why it properly falls within the scope of the privilege.*" In re Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988) (law enforcement privilege) (emphasis added).  An official cannot invoke a privilege without personally considering the material for which the privilege is sought.  Yang, 157 F.R.D. at 634.

"To determine whether the information sought is privileged, courts must weigh the potential benefits of the disclosure against the potential disadvantages.  If the latter is greater, the privilege bars discovery." Sanchez v. City of Santa Ana, supra, 936 F.2d at 1033-34. "The balancing approach of the Ninth Circuit is mirrored in this and other courts' previous determinations that a balancing test is appropriate when the disclosure of law enforcement files in a civil action is at issue." Doubleday v. Ruh, 149 F.R.D. 601, 609 (E.D.Cal. 1993).

**At the outset, with respect to defendants' responses to plaintiff's discovery requests *relative to the requests at issue within both motions herein* wherein defendants have invoked the official information privilege, including any assertion that 15 CCR §§ 321, 370 preclude disclosure, plaintiff is correct that they have failed to comply with the appropriate procedural requisites.  Therefore, they have waived their objections based on any such qualified privilege, and defendants must supplement all responses to include any information withheld on that basis within 14 days.**

### *Defendant Walker*

Plaintiff seeks a response, or further production, in response to requests numbered 1, 3-6, 8-10 of his first set of his requests for production of documents (RFP) served upon defendant Walker and requests numbered 1, 3-15 of his second set.  MTC I, p. 1, Exhs. A & B.

RFP Set One

1. All documents which would mention, discuss, or verify third level director's review and fact finder/confidential inquiry into group appeal log # SAC-C-06-00957 at exhibit "A" in First Set of Admissions to Defendant Leiber served concurrently herewith.

Response to RFP 1

> Responding party objects to this is [sic] request on the grounds it is overbroad, references a document that is not attached to these requests, calls for speculation, violates the privacy rights of third persons who are not parties to this action, and seeks the disclosure of documents protected under section 3321 and 3370.  Based on these objections, responding party will not answer this request.

It is true that plaintiff has not attached the group appeal at issue to the request with this motion to compel, and apparently did not attach it to the above RFP served on defendant Walker; it appears in serving the RFP upon this defendant, plaintiff may have intended for him to cross-reference it as it is identified as attached instead to request for admissions served upon another defendant.  On the other hand, plaintiff appears to have included copies of this group appeal as Exh. O to his complaint.  See Complaint, pp. 83-91.  However, plaintiff was not only not the lead inmate on the group appeal, it is not clear that he was among the inmates who signed this grievance.  This court is not persuaded by the defendant's assertion of the privacy rights of third parties in this context, nor is the fact that the inmate appeal was not attached to the request dispositive, if only for the fact that other requests were responded to even though this same objection was raised as to that point.  See, e.g. RFP 2 directed to defendant Walker.  The fact that plaintiff may not have even been a part of this group inmate appeal in the first place could deem it irrelevant for purposes of this complaint; on the other hand, it does concern food sanitation grievance during a period in which plaintiff was apparently housed there.  Although plaintiff's request is not particularly focused, the motion will be granted to the extent that documents exist relating to any "fact finder/confidential inquiry" into this group appeal.  In addition to asserting violations of the privacy of third-party inmates, defendants contend that plaintiff could obtain the grievance from the inmate.  As noted, plaintiff has already attached a copy of the group grievance at issue in this request, including the third level decision as Exh. O to his complaint.  It appears that what plaintiff is seeking is any other documentation regarding any inquiry into the substance of this grievance.  Defendant asks that if the court grants plaintiff's request, that he be permitted

1    to redact the names of all inmates and any medical records submitted with the appeal.  The court

2    does not construe the request as primarily implicating inmates' medical records.  Instead,

3    plaintiff appears to be seeking documentation of the inquiry that was conducted in response to

4    this grievance.  To the extent the inmates' medical records are implicated, defendant may redact

5    that information, but if the defendant has documentation about any fact finding or inquiry

6    conducted in response to the grievance, the motion as to this request, as modified, is granted.

7            As to RFP 3, seeking documents relating to the director's level

8    appeal response to appeal Log No. SAC-B-07-00150, while defendant posits objections in the

9    response, he also asserts without waiving objections that he does not have any documents

10   responsive to that request in his possession, custody or control beyond those plaintiff has

11   produced with the requests.   MTC, p. 12.  The court cannot direct a party to produce documents

12   that he does not have within his possession, custody or control and the motion as to this request

13   will be denied.

14           In RFP nos. 4 and 5, plaintiff seeks documents verifying the

15   current prison address of two inmates, each of whom he characterizes as a "material witness,"

16   Terral Henry, CDC # P-64498, and Michael Wallace, CDC # E-19190, respectively.  MTC, p.

17   13.  To each of these requests, defendant posits the same objections, that the request "is

18   overbroad, vague as to the meaning of 'material witness,' violates the privacy rights of third

19   persons who are not parties to this action, and seeks disclosure of documents protected under

20   section 3321 and 3370."   Based on the objections, defendant refuses to respond to the request.

21           While these requests might have been better posed as interrogatories, defendants'

22   opposition to these requests on the basis that they encompass "just about every document in these

23   inmates' central and medical files," and implicate their privacy rights with regard to disclosure of

24   their medical records and other personal information, is not well-taken.  It appears most likely

25   that plaintiff is seeking only the most current address for these two inmates for purposes either of

26   communicating with them to obtain declarations in support of any opposition to a pretrial

1  dispositive motion (or for moving for summary judgment himself) or for purposes of having

2  them appear as trial witnesses, should this case proceed to trial.  While it is true that, should

3  plaintiff make the requisite showing of the materiality of any testimony they might have to offer,

4  it is the court which will decide whether or not to issue any writ of habeas corpus ad

5  testificandum for the appearance of either or both at trial (Opp., p. 8), there does not appear to be

6  an overriding objection to plaintiff having access to the current location of these individuals for

7  plaintiff to seek to correspond with them by mail in accordance with the relevant prison

8  regulations.  Defendant Walker is directed to construe these requests for production as

9  interrogatories seeking only the current address of these inmates and to provide this information

10  to plaintiff within 14 days.  Thus, as modified, plaintiff's motion as to RFP nos. 4 and 5 directed

11  to defendant Walker will be granted.

12          As to RFP 6, wherein plaintiff asks for trial size photos that would verify the

13  discovery of Supervisor Cook I Cronjager of rodent contamination of sheet cakes on March 24,

14  2006, although defendant Walker interposes form objections to any such photos, i.e., objecting

15  on grounds of overbreadth, vagueness, failure to identify the documents sought with "reasonable

16  particularity," and lack of foundation, he also asserts, without waiving the objections, that he is

17  not in possession, custody or control of any documents responsive to the request which defendant

18  assumes is in reference to a declaration by Cronjager[8] regarding the condition of particular sheet

19  cakes.  The court cannot compel the production of documents which defendant maintains he does

20  not have in his possession, custody or control.  However, because defendant Walker is the

21  warden of CSPS and he is sued in both his individual and official capacities, the court finds that

22  as the warden, in his official capacity, prison-related documentation or photographs within the

23  facility are within this defendant's possession, custody or control.  Therefore, within 14 days,

24  defendant Walker must supplement his response to inform plaintiff whether or not to his

25  _____

26      [8] Plaintiff does not provide the declaration within this motion, but it is apparently the one copied as Exh. G, p. 65, to plaintiff's complaint.

17

1  knowledge any such photographs exist, and if they do, the defendant must produce them (within

2  the same time frame).   Therefore, as modified, plaintiff's motion with respect to RFP no. 6 is

3  granted.

4         The court will also require defendant Walker to supplement his responses to RFP

5  nos. 8, 9 and 10, in the same fashion within 14 days, each of which seek production of

6  photographs, RFP no. 8, asking for a photo of rodent(s) caught by pest control in the CSPS main

7  kitchen; RFP no. 9, seeking photos of the area in the CSPS main kitchen where an inmate named

8  Michael Wallace, CDC # E-19190, witnessed a "rodent nest," and RFP no. 10, seeking a photo

9  of a dead rodent witnessed by the same inmate in a pan of refried beans in the CSPS main

10  kitchen.   Therefore, solely as modified, plaintiff's motion with regard to RFP nos. 8-10 is

11  granted.

12         RFP Set Two

13         As to RFP 1 of the second set of RFP directed to defendant Walker, wherein

14  plaintiff seeks documents referencing CSPS "retention policy for inspection reports" at CSPS

15  during the times relevant for this lawsuit, defendant Walker objects on the grounds of

16  overbreadth and vagueness, but nevertheless, without waiving these objections, indicates that he

17  is producing specifically identified documents within his possession, custody and control.

18  Plaintiff's motion as to this request will be denied.

19         In RFP 3, plaintiff asks for "[a]ll documents which would mention, discuss, or

20  verify hazardous analysis associated with duties of defendant Ruller at CSPS."  MTC, p. 19.

21  After positing various form objections, including, inter alia, that the request is not reasonably

22  calculated to lead to the discovery of admissible evidence, that is unduly burdensome and

23  oppressive because the Hazard Analysis Critical Control Point (HACCP) program is a multi-

24  volume series and plaintiff has failed to specify any particular section, defendant refuses to

25  produce the HACCP program "unless plaintiff specifies which section he seeks."  MTC, p. 20.

26  Nevertheless, defendant has produced several exhibits which appear to be relevant to the

1  responsibilities of defendant Ruller, described as a supervising cook II in the complaint,

2  including but not limited to a section of the Department Operations Manual and a job description

3  for a supervising correctional cook.  The court finds that defendant appears to have provided

4  plaintiff with relevant information regarding defendant Ruller's position and that he has also

5  agreed to provide information from the HACCP program if plaintiff would follow up with a

6  request for specific sections.  Moreover, in a supplemental response served upon plaintiff

7  regarding an inquiry of another defendant, Rodriguez, plaintiff was informed of the following:

> 8   HACCP stands for Hazard Analysis and Critical Control Points,
>     which is a food safety and self-inspection system that highlights
> 9   potentially hazardous foods and how they are handled in the food
>     service environment.  HACCP does not include training on how to
> 10  respond to the presence of rodents in areas where food is prepared
>     or stored.  Responding party does not have specific training in
> 11  responding to the presence of rodents; however, responding party
>     immediately contacts vector control if he learns or is informed of
> 12  the presence of rodents in an where [sic] food is prepared or stored.

13  Opp., Esquivel Dec., Exh. 7, p. 52.  The motion as to this request will be denied.

14         For the same reasons set forth as to the immediately preceding RFP, plaintiff's

15  motion with regard to RFP 4, a request regarding the "critical control[] point training and

16  implementation" associated with defendant Ruller's duties, is also denied.

17         As to RFP 5, defendant points out in the opposition that defendant has

18  supplemented the response, which the court's review indicates does, indeed, moot the request

19  regarding documentation of defendant Kelly's putative removal as CSPS Health Care Manager.

20  Opp., p. 8, Esquivel Dec., Exh. 6.  Not waiving objections made, in the supplemental response

21  defendant's counsel asserts that a reasonable and diligent search was conducted after which it

22  was determined that "no such documents exist."  Id.  Plaintiff's general insistence (see reply) that

23  responses must be further verified is not well-taken.  The motion as to RFP 5 is denied.

24         As to RFP 6, citing Fed. R. Evid. 501, plaintiff seeks "confidential records and

25  reports...generated in response to appeal log # SAC-C-06-01460," filed in a case related to this

26  one by an inmate Campbell, CDC # H-07298, at CSPS.  MTC, p. 21.  Court records do

1   demonstrate that both the instant case and <u>Jackson v. Walker, et al.</u> CIV-S-06-2023 WBS GGH P

2   are related to <u>Campbell v. CDCR, et al.</u>, CIV-S-07-1419 WBS GGH P.

3            Among the objections posited to this request, which defendant has refused to

4   answer are that:

5            it is vague in its entirety, lacks foundation, fails to state with
             particularity the documents sought, violates the privacy right of
6            third persons who are not parties to this lawsuit, and seeks
             production of document [sic] protected under 3321 and 3370 of
7            Title 15 of the California Code of Regulations.

8   MTC, p. 21.

9            The court does not find this appeal attached to plaintiff's complaint but, as noted,

10  plaintiff Campbell is proceeding in this court on a related case, seeking to implicate the same

11  defendants for unsanitary food conditions, and medical conditions allegedly related thereto, at

12  CSPS.  Attached to plaintiff Campbell's July 18, 2007, complaint in CIV-S-07-1419, are the

13  various levels of his appeal and the responses in log # SAC-C-06-01460 at Exhs. O and P,

14  concerning an alleged medical condition arising from food poisoning at CSPS.  In opposition to

15  the request, defendant asks that if the request is granted, that defendant be permitted to redact

16  personal identifying information and medical records submitted with the grievance to protect

17  inmate Campbell's privacy and his rights under HIPPA.  Opp., p. 8.  Because the request seeks

18  information generated in response to Campbell's grievance, it does not appear to implicate the

19  third party privacy rights or HIPPA concerns.  Plaintiff appears to be seeking documentation of

20  the type of inquiry that was pursued in response to the grievance and to that extent only, if

21  defendant has within his custody, possession and control documents responsive to this request,

22  excluding Campbell's medical record or other identifying information, they must produce it.

23  Thus, as modified, plaintiff's motion as to this RFP 6 is granted.

24            In RFP 7, plaintiff asks for all documents regarding CSPS Medical Technician

25  Assistant M. Spinks' "assertion of epidemic at CSPS in May 2006."  In response to this request,

26  defendant makes form and privilege objections but concludes that without waiving these

1    objections, he has no documents responsive to the request beyond the first level reviewer's

2    response to Appeal Log. No. SAC-C-06-01460 (the appeal referenced in RFP 6, evidently) which

3    plaintiff had (apparently) attached to his discovery.  As stated, the court cannot compel a party to

4    produce documentation not within his custody, possession or control.  However, the court will

5    require defendant Walker, within 14 days, to supplement his response to inform plaintiff whether

6    or not to his knowledge any such documentation exists, and if it does, to produce it within the

7    same period of time.  Therefore, as modified, the motion as to this request is granted.

8           In RFP 8, plaintiff seeks "all documents which would mention, discuss, or verify

9    symptoms which required medical treatment to inmates at CSPS in May 2006 as asserted by

10   MTA Spinks."  MTC, p. 22.   In RFP 9, plaintiff asks for all documents mentioning, discussing

11   or verifying the medications provided to CSPS inmates during the epidemic referenced by MTA

12   Spinks.  In RFP 10, plaintiff asks for all documents mentioning, etc., the names of health

13   officials who diagnosed the epidemic outbreak in 2006 referenced by MTA Spinks.  (This

14   request might have been better posed as an interrogatory simply asking for the names).  In RFP

15   11, plaintiff seeks all documentation that "would mention, discuss, or verify how health officials

16   at CSPS determined" that the epidemic identified by MTA Spinks was bacterial and not viral.

17   To all of these requests, defendant posits the same series of objections, i.e, that the each request

18   is overbroad, vague, lacking in particularity, violates third-party privacy rights, and seeks

19   production of documents protected under Cal. Code Regs. tit.xv, §§ 3321 and 3450.  MTC, pp. 22-

20   23.  Notwithstanding the objections, defendant maintains that he does not have any responsive

21   documentation in his possession, custody or control (and as to RFP 8-10, defendant notes that

22   this is with the exception of the first level appeal response in appeal log no. SAC-C-06-01460

23   plaintiff provided with his discovery).  Again the court will require defendant Walker, within 14

24   days, to supplement his response to inform plaintiff whether or not to his knowledge any such

25   documentation exists responsive to these requests, and if it does, to produce it within that time

26   frame.  Therefore, as modified, the motion as to RFP 8, 9, 10 and 11 is granted.

1        In RFP 12, plaintiff seeks documentation which would "mention, discuss, or

2  verify difference between bacterial and viral epidemic during times relevant in this action."

3  MTC, p. 12.  In RFP 13, plaintiff asks for all documents that "mention, discuss, or verify how

4  bacterial epidemic occurred at CSPS during times mentioned by MTA S. [sic] Spinks."

5  Defendant raises form (including as to RFP 13 that this request "misstates the contents of a

6  document") and privacy objections as to these requests; however, without waiving objections,

7  maintains he has documents responsive to the requests.  Defendant is directed to supplement

8  these responses within 14 days to inform plaintiff whether or not to his knowledge any such

9  documentation exists responsive to these requests, and if so, to produce it within that time period.

10  To that extent only, plaintiff's motion as to RFP 12 and 13 is granted.

11        RFP 14 will be denied as therein plaintiff asks this defendant to provide

12  documentation regarding another defendant's awareness of a putative bacterial epidemic at

13  CSPS; however, as to RFP 15, which requests any documents noting defendant Walker's

14  awareness of same, this defendant will be required to supplement his response to ascertain

15  whether or not he has any knowledge of the existence of any such documentation and, if so, to

16  produce it.

17        *Defendant Haythorne*

18        Within his complaint, plaintiff alleges that this defendant is the CSPS Business

19  Services Manager at CSPS "responsible for ensuring the health and safety standards of food

20  preparation and service."  Complaint, p. 4.  Defendant's counsel indicates that as of January

21  2009, defendant Haythorne has no longer been employed at CSPS.  Opp., Esquivel Dec., ¶ 7.

22  Plaintiff seeks a response to request numbers 3, 4, 6, 7, 9-13, 15-19, 21-23, 25 of his set one of

23  the requests for production he propounded upon defendant Haythorne.  MTC I, p. 1, Exh. C.  As

24  to RFP 3, 4, 6, 7, 9-13, 15-19, these requests cross-reference defendant Haythorne's responses to

25  interrogatories plaintiff evidently served upon this defendant.  Defendant has not provided the

26  interrogatories or the responses within this motion; in any case, defendant Haythorne posited no

objections to any of these requests and indicates that various documents are being provided in response or that he has no responsive documents within his possession, custody or control. Assuming the interrogatories to Haythorne that are referenced are those attached to a wholly different motion to compel, filed on a later date (see second motion to compel below), plaintiff's failure to provide with more specificity within this motion what it is that he finds deficient with respect to each request for production herein places an untenable burden on the court. Notwithstanding, the court's review of the interrogatories at issue in the second motion, assuming they contain the interrogatories cross-referenced herein, does not make sufficiently clear the basis for plaintiff's dissatisfaction herein.  Moreover, as noted, no objection was raised to these RFPs, and, in addition, defendant Haythorne has provided, as of March 17, 2009, amended responses to the requests, which assert with respect to each RFP for which no documents have been provided that "after a reasonable and diligent search, responding party has no responsive documents in his possession, custody, or control."  See Opp., Esquivel Dec., ¶ 4, Exh. 3, pp. 15-22.   Plaintiff points to no portion of Fed. R. Civ. P. 34 that would support his contention that this defendant should be directed to provide "a verified statement" from a third-party employee "in a position to know," asserting that after a diligent search "it" has been unable to locate responsive documents.  Reply, p. 5.  The motion as to these requests is denied.

As to RFP nos. 21-23, 25, plaintiff again cross-references within the requests interrogatory responses that are not provided within this motion, seeking documents related to these unsupplied responses.  Moreover, in this case, each request seeks defendant Haythorne's production of documents with respect to the interrogatory responses of another party, defendant Rodriguez.  Defendant Haythorne's objections to these requests, including that they called for speculation and were not directed to defendant Haythorne, are well-taken, and the motion as to these requests is inadequate and is denied.

\\\\\

\\\\\

    *Defendant Leiber*

Plaintiff moves for an order compelling responses to his RFP set one propounded upon defendant Leiber as to requests numbered 3-8, 15, 16, 18-25.   MTC I, pp. 1-2, Exh. D.   As to plaintiff's motion to compel further production/response to RFP nos. 3, 4, 5, 6, 7, 8, 15, the motion suffers from the same deficiency noted above with regard to cross-referencing interrogatory responses (that were directed to this defendant), for which neither the interrogatory nor the response is provided within this motion and the basis for the motion with regard to the responses to these requests are too ill-defined within this motion.  In addition, this defendant raises no objections to any of these requests, the subject of which plaintiff has failed to provide herein, but simply asserts that she has no documents responsive to the requests or that any responsive documentation has been produced.  Moreover, the defendant has amended responses to each of these requests for production propounded upon defendant Leiber to aver that "after a reasonable and diligent search," she "has no other responsive documents in her possession, custody, or control."  Esquivel Dec., Ex. 4, pp. 26-30.  The motion as to these requests (RFP nos. 3, 4, 5, 6, 7, 8, 15) is inadequate and will be denied.

In RFP 16, plaintiff asks for "[a]ll documents which would mention or prove that plaintiff is not entitled to relief in this action."[9]  In response, while defendant Leiber raises form objections, without waiving the objections, this defendant notes documents provided in response to other requests and avers that she was no other responsive documents in her possession, custody or control.  The court will not compel a further response, and the motion as to RFP 16 is denied.

\\\\\

\\\\\

---

[9] Moreover, a discovery request which seeks in general terms for a defendant to produce documents which will prove that he will lose the case is without question improper.  Such a request usurps the purpose of Fed. R. Civ. P. 16, and requests a legal conclusion on the part of the responding party.

1

RFP 18:

2 All documents which would mention, discuss, or verify that

3 protection of the integrity of an investigation was the reason for
your rehousing of plaintiff on August 11, 2006.

4 Response:

5 Responding party objects to this request on the grounds it is vague
in its entirety and is unduly burdensome and oppressive because it

6 is duplicative of Nos. 12 to 14, above. Without waiving these
objections, in addition to the General Chrono CDC 128-B, attached

7 as Exhibit A to plaintiff's interrogatories to responding party,
responding party produces under separate cover the following

8 documents in her possession, custody, or control: Exhibit 24
(sections 3270, 3375, and 3379 of Title 15 of the California Code

9 of Regulations), Exhibit 25 (sections 52020.5.3 to 52020.5.5 and
52020.7 and 52020.8 of Department of Operations Manual,

10 Chapter 5, Article 16), and Exhibit 22 (Plaintiff's Inmate/Parolee
Appeal Form (CDC 602), Log No. SAC-C-06-02265).

11 MTC, pp. 43-44.

12 Plaintiff's motion does not adequately explain to what investigation he is alluding in this request,

13 nor how the response/production is deficient, and the motion as to RFP 18 is denied.

14   In RFP 19, plaintiff seeks documents that "would mention, discuss, or verify" that

15 CSPS vector control "quickly eliminated all rodents/rats from CSPS main kitchen during the

16 times the deprivations are claimed in this lawsuit." MTC, p. 44. Without waiving some form

17 objections, the defendant answers that she has no responsive documents other than second level

18 appeal responses plaintiff attached to his discovery. Although in an amended response, this

19 defendant avers that she has conducted a reasonable and diligent search but uncovered no other

20 responsive documents (see Esquivel Dec., Exh. 4, p. 41), as a correctional captain in charge of

21 CSPS C-facility operations, sued in both her official and individual capacities, defendant Leiber

22 will be required to supplement her response to this request within 14 days to inform plaintiff

23 whether or not any documents responsive to this request exist; if they do, in her official capacity

24 as correctional captain, this defendant will be required to produce any such documentation within

25 the same period of time.   As modified, plaintiff's motion as to RFP 19 is granted.

26 \\\\\

1    In RFP 20, plaintiff asks for all documents which would "mention, discuss, or

2    verify," that this defendant conducted health and safety inspections of the CSPS main kitchen

3    during the times relevant for this action.  MTC, p. 44.  After positing form objections and

4    without waiving them, defendant Leiber indicates she has produced her job description, along

5    with two exhibits including CAL. CODE REGS. tit.xv, § 3052 and a section of the Department of

6    Operations Manual.  MTC, p. 44.  It appears that this documentation is partially responsive to the

7    request, insofar as plaintiff appears to be also asking for documents showing not just what this

8    defendant's job description or responsibilities are, but, what, if any, health and safety inspections

9    she conducted.  Therefore, defendant must supplement her response to this request within 14

10   days to inform plaintiff whether or not any documents directly responsive to this request exist; if

11   they do, in her official capacity as correctional captain, this defendant will be required to produce

12   any such documentation within the same period of time.  As modified, plaintiff's motion as to

13   RFP 20 is granted.

14   In each of the requests for production, numbered 21, 22 and 23, plaintiff asks for

15   "trial size photographs."  MTC, p. 45.  In RFP 21, he asks for photos "of the area in which it

16   is alleged that rodents/rats accessed CSPS main kitchen during heavy rain season."   In RFP 22,

17   he seeks photos "of the sticky traps used by CSPS vector control[] to catch rodents/rats in the

18   main kitchen."  In RFP 23, plaintiff asks for photos of the CSPS main kitchen dry goods room.

19   As to RFP 21 and 22, defendant indicates that she does not have any responsive documents, and

20   in amended responses (Esquivel Dec., Exh. 4), indicates she has conducted a reasonable and

21   diligent search.  As to RFP 23, defendant indicates that she is producing five photographs.  With

22   regard to RFP 21 and 22, this defendant must supplement her response to indicate whether she

23   has knowledge, in her official capacity, of the existence of any such photographs, whether "trial-

24   size" or not, and, if so, to produce them, within 14 days.  As to RFP 23, no further response will

25   be required.  Plaintiff's motion as to RFP 21 and 22, is granted, as modified.  Plaintiff's motion

26   as to RFP 23 is denied.

1          In RFP 24 and 25, plaintiff asks for "non-confidential documents which would

2  allow plaintiff to call" as material witnesses to testify Cook I Cronjager and Cook I D.S. Abellon,

3  respectively, regarding their "verified statements" (or declarations), (apparently attached as an

4  exhibit to interrogatories to another defendant Hague, but not produced here).  MTC, p. 46.  In

5  other words, plaintiff appears to be seeking the addresses of these individuals so that he could

6  notify them or subpoena them for their testimony in future, which information might have been

7  more appropriately sought in the form of interrogatories.  To both of these requests, in

8  objections, defendant refuses to respond, citing, inter alia, the right to privacy of these third

9  parties and CAL. CODE REGS. tit.xv, §§ 3321 and 3450.  MTC, pp. 46-47.  Moreover, defendant

10  maintains that disclosing the addresses of these individuals to a prisoner compromises their

11  safety and less intrusive means to secure their presence at trial could be in the form of court

12  subpoenas.  Opp., p. 6.  Defendant indicates that Abellon still works at CSPS and that although

13  Cronjager has since retired, she has authorized the CSPS Litigation Coordinator to accept service

14  of subpoenas related to employment on her behalf.  Id.  The court agrees that a further response

15  to these requests, RFP nos. 24 and 25, should be denied insofar as the home addresses of these

16  individuals should not be produced, but the court will require that the CSPS Litigation

17  Coordinator must accept service of any subpoena of Abellon and Cronjager at the CSPS address,

18  and, should the time arrive wherein plaintiff will seek to serve subpoenas upon them, defendants

19  will be responsible for assuring that these subpoenas have been properly served in accordance

20  with the above.[10]

21          *Defendant Hague*

22          Plaintiff identifies numbers 3, 6-9, 11-13, 16-25 of his RFP, set one, directed to

23  defendant Hague as warranting an order compelling further responses.  MTC I, p. 2, Exh. E.

24  Plaintiff describes this defendant as the assistant food manager at CSPS, responsible for the

25  _____

26          [10] Plaintiff is responsible for paying costs associated with subpoena compliance.

health and safety standards of food preparation and service at CSPS.  Complaint, p. 4.  Plaintiff also indicates that she was employed as a supervising cook II in his discovery requests.  MTC, p. 53.

In RFP 3, plaintiff asks for documents related to the duties/obligations of the CSPS' Business Service Manager.  MTC, p. 51.  The court agrees with the defendant's response that the request is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  It is unclear why plaintiff would ask this of the assistant food manager, particularly since he has named another defendant who he states is the business service manager; in any event, it is understandable why this defendant, as she so indicates, would not have responsive documents.  Id.  The motion to compel as to RFP 3 is denied.

Plaintiff asks for "all documents which would mention, discuss, or verify the guidelines and regulations which govern health and safety kitchen inspections at the CSPS" in RFP 6.  MTC, p. 52.  The defendant in her response set forth a series of exhibits indicating production of CAL. CODE REGS. tit.xv, § 3052, as well as a section of the Department Operations Manual and a procedure form the Panty [sic] Operations Manual.  Id, at 53.  Plaintiff does not provide an adequate basis in his motion for finding this response/production inadequate.  The motion to compel as to RFP 6 will be denied.

In RFP 7 and 8, respectively, plaintiff asks for documents mentioning, discussing or verifying health and safety inspections conducted by this defendant while employed as a CSPS supervising cook II, and while employed as CSPS assistant food manager.  MTC, p. 53.  In response to each of these requests, the defendant provides a list of exhibits which include a job description, as well as apparently application regulations and procedures.  Id., at 53-54.  What is missing, however, is evidence of any exhibit that would demonstrate that this individual ever conducted health and safety inspections.  As this defendant, like all the others, is sued in an official, as well as individual, capacity, she must supplement her response to produce any evidence of the actual health and safety inspections she conducted and to which she should have

1  access, if such exists.  This defendant has 14 days to supplement her response to RFP nos. 7 and

2  8.

3         In RFP 9, plaintiff asks for documents regarding "any action or response by the

4  CSPS Hazard Analysis and Critical Control Point (HACCP) Program related to the issues raised

5  by this lawsuit," to which the defendant responds by producing a section of the Department

6  Operations Manual.  MTC, p. 54.  If defendant, not just in her individual capacity, but her official

7  capacity as well, can locate any material directly responsive to this request, it must be produced

8  within 14 days.  The motion as to RFP 9 is granted.

9         In RFP 11, plaintiff asks for documents that "mention, discuss, or verify the

10  requests made to the CSPS vector control[] to address rodent/rat issues in the main kitchen at

11  CSPS."  MTC, p. 55.  In RFP 12, plaintiff seeks documents referencing the response by CSPS

12  vector control in addressing rodent/rat concerns in the main kitchen.  Id.  In the substantive

13  portions of the responses, the defendant lists a number of memoranda and, as to RFP 11, also a

14  note that she indicates is provided under separate cover.  Id. at 55-56.  Plaintiff in no way

15  clarifies how these responses/productions are inadequate; in his reply, plaintiff states that the

16  documents produced do not comply with his specific request (reply, pp. 6-7); however, plaintiff

17  fails to adequately demonstrate how this is so.  The motion as to RFP 11 and RFP 12 is denied.

18         In response to RFP 13, this defendant maintains that she has no responsive

19  documents in her possession, custody or control, after conducting a reasonable, diligent search to

20  plaintiff's request for "inspection of kitchen reports" which related to health and safety

21  issues/inspections at CSPS that she turned in to facility sergeants.  MTC, p. 56.  However, she

22  limits her response to the period she deems relevant to this lawsuit.  The court will order this

23  defendant to supplement her response, within 14 days, to include any such reports that she may

24  have within her custody, possession or control.  The motion as to RFP 13 is granted.

25         Plaintiff fails to clarify how the response to RFP 16, concerning documentation of

26  (non-party) Head of Plant Operations Albee's response to "issues and complaint of verminous

1   conditions in the CSPS main kitchen" is inadequate and motion as to this request will be denied.

2   At RFP 17, plaintiff asks for documents which would show "the cost and expense of" addressing

3   "verminous conditions" at CSPS at the time relevant for this lawsuit.  MTC, p. 58.  Despite

4   objecting, this defendant goes on to indicate she is producing a specific "contract/delegation

5   purchase order" and an intraoffice requisition.  Plaintiff includes the contract/purchase order (and

6   apparently the requisition order) as an exhibit to his reply and argues that it shows "an

7   unreasonable cost and expense" in light of the level of main kitchen rodent infestation.  Reply, p.

8   7 & Exh. A.  Plaintiff may be able to show that very little was spent to address the alleged rodent

9   problem, which could undermine the defense position.  It is not entirely clear whether all related

10  documents responsive to this request have been produced.  If there are further documents

11  responsive to this request within this defendant's custody, possession or control, within her

12  official and individual capacities, they must be produced within 14 days.  The motion as to RFP

13  17 is granted.

14          The court will not detail RFP nos. 18-20, for which plaintiff fails to provide an

15  adequate basis for this motion and for which the court's separate review can determine no

16  sufficient basis.  MTC, pp. 58-59.  In each case, while the defendant posited objections to which

17  plaintiff generally objects in his motion (p. 6), the defendant proceeded, without waiving the

18  objections, to assert that a reasonable and diligent search had been conducted and the only

19  responsive documents that she had to those requests were specified exhibits attached to

20  plaintiff's complaint.  Plaintiff's contention that this defendant should be directed to provide a

21  verified statement from an employee/employees in a position to know, stating that after

22  apparently a separate diligent search has been conducted, responsive documents could not be

23  found (reply, p. 6) is not adequately supported.  The motion will be denied as to RFP nos. 18, 19

24  and 20.

25          By his motion, plaintiff makes no showing of the inadequacy of the responses to

26  RFP 21 and 23, other than his assertion that the defendant warrants that she has no responsive

documents, and he once again asks that the defendant be required to submit a declaration that a third party or parties conduct a separate search.  Reply, p. 6.  In the first place, as to RFP 21, wherein plaintiff seeks documents regarding the duties and obligations of "CSPS HACCP program unit relevant to the issues raised by this lawsuit," the response does indicate that an exhibit is being provided under separate cover and plaintiff has not shown how the response is deficient.  The motion as to RFP 21 will be denied.

As to RFP 22, the defendant indicates a reasonable and diligent search to locate responsive documentation to his request for documents which would "mention or discuss reasons why the California Department of Health Services are [sic] not permitted to conduct food facility inspections of CDCR prisons and institutions, including CSPS main kitchen," identifies an exhibit which plaintiff himself has provided and avers there has no further such documentation.  This request appears to stray afield from issues relevant to this case and the motion as to this request will be denied.

As to RFP 23, plaintiff seeks any documentation of "the first evidence or discovery of rodent/rat activity at the CSPS main kitchen."  MTC, p. 60.  In this instance, the defendant does indicate that, following a reasonable and diligent search, she has no responsive documents.  Id.  The court will not compel a further response, and the motion as to RFP 23 is denied.

As to RFP 24, plaintiff therein seeks "[a]ll documents which would mention, discuss, or verify qualifications and reasons for promoting defendant Hague from supervising cook II to assistant food manager at CSPS."  MTC, p. 60.  The defendant responds that the request is objectionable because:

> it is overbroad, is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, violates responding party's privacy, and seeks production of documents protected under sections 3321 and 3450 of Title 15 of the California Code of Regulations.  Based on these objections, responding party will not respond to this request.

MTC, pp. 60-61.

Plaintiff contends that this defendant has asserted the official information privilege without providing a sufficient basis or without a declaration from an appropriate official.  MTC, p. 4.  Plaintiff argues the privacy interests invoked are not an absolute bar to discovery, and argues correctly that state privilege doctrine does not bind federal courts in this context.  Id., at 5.

Defendant argues, inter alia, that while plaintiff's allegation is that this defendant knew of and ignored unsanitary food service conditions at CSPS from which he got food poisoning, and that she retaliated against him by transferring him to another housing unit at CSPS, he does not allege that she was incompetent, nor does he make a claim against her supervisors, defendants Haythorne or Walker, for negligent hiring or supervision.  Opp., p. 5. The court agrees that the reasons for her promotion are largely irrelevant to this action.  The undersigned further agrees that to the extent there could be any relevance to such information as her qualifications, the request is far too broad and would encompass all of this defendant's personnel and employment records.  See Opp., p. 6.  It is particularly true that plaintiff could have obtained any relevant information through less intrusive means by asking her within an interrogatory to set forth her training, education and work experience.  In addition, to the extent that this defendant's personnel records are sought, the court finds that in balancing her right to privacy against plaintiff's need for the information, the balance favors the defendant.  Doubleday v. Ruh, 149 F.R.D. at 609.  The motion as to RFP 24 is denied.

In RFP 25, plaintiff asks for "[a]ll documents which would mention, discuss, or verify any change in policy, procedure, and practices in the CSPS main kitchen following the filing of this lawsuit."  MTC, p. 61.  Defendant posits several objections, objecting to the request as overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and lacking foundation, as well as claiming that it violates Fed. R. Evid. 407.  Id. Nevertheless, without waiving the objections, this defendant states that following "a reasonable and diligent search," she "has no responsive documents in her possession, custody or control."

Id.  To the extent that plaintiff asks the court to require that defendant Hague be ordered to provide a verified statement from an employee or employees in a position to know stating that after a diligent search, no responsive documents have been located (reply, p. 6), plaintiff does not provide a basis upon which the court could or should order this defendant to impose on a non-party to do so, nor does he demonstrate that any such verification must be submitted pursuant to Fed. R. Civ. P. 34.  To the extent that defendant claims that the request violates Fed. R. Evid. 407, the court would not find that to be a sustainable objection insofar as, while Rule 407 precludes evidence of subsequent measures taken after an injury or harm to prove culpability, it would not exclude evidence of such measures for the purpose of, for example, showing "control, or feasibility of precautionary measures, if controverted, or impeachment."  However, the defendant does not rest on the objection, but avers that she has no such responsive documentation.  Moreover, the request is, indeed, overbroad.  The motion to compel as to this request is denied.

### Defendant Ruller

Plaintiff asks that defendant Ruller be required to respond further to all of his requests, 1-25 of plaintiff's RFP, set one, directed to Ruller.  MTC I, p. 2, Exh. F.   He complains that this defendant, in simply responding that "responding party has no responsive documents," has not made a "diligent effort to conduct a reasonable search for documents" or provided a declaration to support the responses.  MTC, p. 8.

In Exh. 5 to the Esquivel Dec., defendant indicates that amended responses have been served to these requests for production.  Opp., Esquivel Dec., ¶ 4, Exh. 5.  With respect to each response to RFP 1-21, defendant Ruller stated, in addition to those cases where production had already been provided or where none had been provided that "a reasonable and diligent search" had been conducted revealing "no responsive documents in his possession, custody, or control."  Opp., Esquivel Dec., Exh. 5, pp. 37-44.  In reply, plaintiff asks the court to require defendant Ruller to provide a verified statement from an employee or employees in a position to

1   know stating that after a diligent search, no responsive documents have been located.  Reply, pp.

2   7-8.  Again, plaintiff does not clarify how the court could order this defendant to impose on a

3   non-party to do so.

4           A number of these requests cross-reference interrogatories without providing,

5   within this motion, the substance of what documents plaintiff seeks.  Assuming that the

6   interrogatories referenced are plaintiff's provides as the subject of the second motion to compel

7   that follows (but most of which are not at issue with respect to defendant Ruller in the second

8   motion), plaintiff does not meet his burden to show how the amended responses to the requests

9   herein stating that a reasonable and diligent search has been conducted uncovering no responsive

10  documents within this defendant's possession, custody or control is insufficient.  In any event,

11  plaintiff has made it too burdensome to the court to parse the many cross-referenced requests and

12  the motion will be denied as to RFP 1-25.

13  Second Motion to Compel

14          In the second motion to compel, plaintiff seeks further responses to some 53 of his

15  interrogatories directed to the defendants.  Motion to Compel 2 (MTC2).  Plaintiff identifies the

16  following responses as deficient: as to defendant Walker, the responses to the first set of

17  interrogatories, nos. 3, 8, 9, 15, 16, 22 and 25.  MTC2, p. 1 and Exh. A.  As to defendant

18  Haythorne, plaintiff seeks a "complete and full response" to his first set of interrogatories

19  numbered 7, 8, 9, 15, 17, 20, 22, 23 and 24.  MTC2, p. 1 and Exh. B.  As to defendant Leiber,

20  plaintiff identifies the following responses to his first set of interrogatories directed to this

21  defendant numbered 4, 7, 8, 9, 10, 16, 21, 22, 23and 24.  MTC2, p. 1 and Exh. C.  With regard to

22  defendant Hague, plaintiff seeks further responses to his nos. 5, 9, 12, 13, 14, 23 and 25 of his

23  first set of interrogatories to this defendant.  MTC2, pp. 1-2 and Exh. D.  Plaintiff also moves for

24  further responses to his first set of interrogatories, nos. 8, 9, 11, 12, 13, 15, 16, 17, 18, 21, 22, and

25  23, directed to defendant Kelly.  MTC2, p. 2 and Exh. E.  Plaintiff also seeks further responses to

26  nos. 2, 3, 4, 7 and 19 from defendant Rodriguez to the first set of interrogatories propounded

34

upon him.  MTC2, p. 2 and Exh. F.  Finally, as to defendant Ruller, plaintiff asks for further responses to nos. 12, 13 and 25 of the first set of interrogatories directed to this defendant. MTC2, p. 2 and Exh. G.  Plaintiff contends generally that the responses at issue are evasive and incomplete and he moves for sanctions pursuant to Fed. R. 37(a)(4).  MTC2, p. 2.  Plaintiff asserts that he did not oppose defendants' two motions for extensions of time to respond to his discovery requests,[11] but that in light of the responses he received, he believes these defendants have not acted in good faith.  MTC2, p. 3.  Plaintiff argues that despite his efforts to resolve this matter without court intervention, they have not rectified what he contends are evasive, incomplete responses that also do not indicate that diligence was exercised with regard to locating responsive information.  MTC2, pp. 3-5.  Plaintiff asks for monetary sanctions against defendants' counsel for what he generally characterizes as "bad faith and/or harassing conduct." MTC2, p. 7.

In opposition, defendants contend that plaintiff served ten sets of interrogatories and production requests upon defendants on October 20, 2008, after which plaintiff also served requests for admissions, bringing the total to nineteen sets of discovery, amounting to more than 400 discovery requests  Opposition 2 (Opp2), p. 1.  Specifically, as to interrogatories, according to defendants, there were 190 propounded upon them.  Id.  Defendants state that all defendants, except Smith, served their responses on February 19, 2009, while defendant Smith's interrogatory responses were served on March 2, [2009].[12]  Id.  Defendants assert that they responded to all but one of the 190 interrogatories and maintain that while they received a letter, dated Feb. 24, 2009, from plaintiff "stating his discontent with defendants' responses" both to the his interrogatories and production requests, he failed to specify reasons for his dissatisfaction.

---

[11]  These requests were granted by an <u>Order</u>, filed on Dec. 16, 2008, and an <u>Order</u>, filed on Jan. 14, 2009.

[12] In addition to the two extensions of time defendants were granted to serve their discovery responses, defendant Smith received a further extension of ten days to serve her responses to interrogatories.  <u>See</u> <u>Order</u>, filed on Feb. 25, 2009.

Opp2, p. 2, Esquivel Dec., Exh. 1.  Subsequently, defendants' counsel avers she sought to address plaintiff's concerns, in a letter dated March 11, 2009, as well as she could given the limited information he provided; counsel served a supplemental response to the second interrogatory directed to defendant Rodriguez on March 24, 2009.  Opp2, p. 2, Esquivel Dec., Exhs. 2, 7.  Defendants argue that plaintiff's motion should be denied because plaintiff has failed to show how the responses are inadequate and evasive, and as to Interrogatory no. 22 directed to defendant Walker, to which that defendant interposed objections and otherwise did not respond, the motion should be denied because the objections were well-founded and had merit.  Opp2, pp. 2-3.

### *Defendant Walker*

As noted, plaintiff moves for a further response to the following of defendant Walker's interrogatory (int.) responses: nos. 3, 8, 9, 15, 16, 22 and 25.  MTC2, p. 1 and Exh. A.

As to Int. # 3, plaintiff asks for defendant Walker to state all the facts "within your knowledge" to support his response to the preceding Int.# 2.  MTC2, p. 10.[13]  In response, after raising objections on the basis of overbreadth, vagueness and lack of foundation, defendant Walker repeats his response to the second interrogatory, in which plaintiff asks Walker to "explain and provide" all knowledge that he has "as to whether the CSPS main kitchen was infested by verminous conditions during the time you were warden over CSPS."  In response to Int. #3, after interposing and not waiving objections, defendant Walker states that he "has no knowledge of the Main Kitchen being 'infested by verminous conditions' since he was appointed Warden in November of 2007."   (His response to Int. 2 was identical, except that therein he does not note the date when he became the warden).   The court will require no further response, and the motion is denied as to Int.# 3.

\\\\\

---

[13] The court's electronic pagination is referenced.

1          As to Int. #8, plaintiff references Int. # 7, which in turn references a group inmate

2   appeal, log no. SAC-06-00566, wherein this defendants' second level appeal response included

3   the statement that his inquiry regarding the grievance revealed "that rodents have been a problem

4   recently due to heavy rains in the area."   Plaintiff does not attach the exhibit referenced in Int. #7

5   to the motion; instead, the court has found the document at issue attached as Exh. E to his

6   complaint.   Plaintiff's repeated failure to include all relevant documentation within his motions

7   imposes an unwarranted burden on this court in his voluminous requests.   In Int. # 8, plaintiff

8   asks, as noted referencing the prior interrogatory, if it is this defendant's "statement under oath

9   that rodents became a problem in the CSPS main kitchen only after heavy raining."   After

10  interposing various objections and not waiving them, defendant Walker went on to assert,

11  correctly, that in the preceding interrogatory the request had gone to the basis of this assertion in

12  the inmate appeal response and the response was limited to that interrogatory.   Although

13  grievance responses are not made under oath, all of the defendants' substantive discovery

14  responses are.   Plaintiff would have been better served simply to ask defendant Walker directly

15  whether the presence of rats/rodents in the CSPS main kitchen was caused solely by heavy rains.

16  On the other hand, defendant Walker should not be permitted to escape the import of the

17  interrogatory and to limit his response simply because plaintiff could have posed the question(s)

18  more artfully.   Within 14 days, this defendant must supplement his response to answer the

19  question of whether or not the presence of rats/rodents in the main kitchen was solely attributable

20  to heavy rains.   The motion as to Int. # 8 is therefore granted.

21          In Int. # 9, plaintiff's asks this defendant to "explain and provide all knowledge as

22  to how you contend rodents were eliminated," still referencing the same appeal response.   MTC2,

23  pp. 12-13. The substantive portion of defendant's response is conclusory in that he simply states

24  that "the investigation into the inmate appeal revealed that Vector Control aggressively

25  responded to the presence of rodents in the Main Kitchen to eliminate the problem."   Id., at 13.

26  Defendant must supplement his response to show the basis for his conclusion that the rodent

37

1  problem was "aggressively" addressed and must do so within 14 days.  The motion as to Int. # 9

2  is granted.

3         Plaintiff provides no basis for the court to rule on his motion with respect to Int. #

4  15 which asks the defendant "why the regular B-Facility Lieutenant at CSPS did not act as SHO

5  to perform regular SHO duties in RVR's."  MTC2, p. 15.  Defendants are correct that this

6  interrogatory is, inter alia, vague, unintelligible, lacking in foundation, and "an incomplete and

7  improper hypothetical."  Id.  Even referencing the prior interrogatory (at MTC2, p. 14) provides

8  no clarification because even though an apparently related inmate appeal is identified and stated

9  to be attached as Exh. C, it is not provided with the motion, nor can the court locate it among

10 plaintiff's immense collection of exhibits attached to his complaint.  Plaintiff makes no showing

11 that defendant's response to Int. # 15 is inadequate, which states that "it is common for a

12 lieutenant from another yard to act as the SHO at a rules violation hearing, especially when

13 necessitated by time constraints or other needs."  Id., at 15. Although plaintiff makes a claim of

14 retaliation against defendant Hague within his complaint in the form of a false rules violation

15 report, plaintiff does not even show in his motion at this point, the relevance of this interrogatory.

16 The motion as to Int. # 15 is denied.

17         In Int. # 16, plaintiff asks defendant Walker what knowledge or evidence he has

18 to refute (evidently plaintiff's) claim that defendant Hague was upset about the expiration of

19 "time restraints" for the RVR, using his [or her] "personal influence to compel a Lieutenant

20 Heintschel to leave CSPS Central Office specifically to act as SHO to find plaintiff guilty."

21 MTC2, p. 15.  Plaintiff has not included within this motion the RVR at issue, as he claims to

22 have attached as an exhibit.  After interposing various well-founded objections to the question,

23 including that it "lacks foundation" and "calls for speculation," defendant Walker nevertheless

24 responds that he lacks "sufficient knowledge, information, or belief to answer this interrogatory."

25 Id.  Plaintiff provides no basis within his motion for the court to determine that this response is

26 deficient.  The motion as to Int. # 16 is denied.

In Int. # 22, plaintiff asks:

> Please explain and provide all knowledge you have as to whether material witness D.S. Abellon has been subjected to discipline or adverse personnel action for providing verified statement at exhibit D herein.

> Response:
> Responding party objects to this interrogatory on the grounds it is overbroad, is vague as to the meaning of "material witness," "subjected to discipline or adverse personnel action," and "verified statement," lacks foundation, is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, violates Abellon's right to privacy, and seeks disclosure of information protected under sections 3321 and 3450 of Title 15 of the California Code of Regulations.

MTC2, pp. 17-18.

Once again, plaintiff fails to include the putative attached exhibit with his motion. However, a copy of an apparent declaration under penalty of perjury by a correctional supervising cook I, named D.S. Abellon, at CSP-Sacramento and dated July 6, 2006, is included as Exh. S to the complaint, at p. 107. Among the statements in the declaration is that plaintiff is an above average worker, well aware of the operations of the main kitchen. See, id., at ¶ 2. He goes on to state that he has read the allegations of a complaint filed by this plaintiff, Williams v. CDCR, et al., CIV-S-06-1373 [MCE EFB P], of which this court takes judicial notice.[14]  Id., at ¶ 3. (The undersigned digresses to note that that case was dismissed for failure to exhaust administrative remedies on September 26, 2007. The instant case was filed shortly thereafter and essentially mirrors the allegations of the earlier filed case, implicating the same defendants). This declarant continues, stating that the issues raised by plaintiff, regarding rat/rodent infestation in the CSPS main kitchen are true and that he has witnessed it. Id., at ¶ 4. Finally, he attests to his training and experience in dealing with rats/rodents and maintains that the elimination of

---

[14] Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

1    them would require complete fumigation of the main kitchen.  Id., at ¶ 5.

2           As previously noted, any invocation of an official information privilege has been

3    waived by defendants.  To the extent that defendants assert a third-party privacy objection, the

4    court finds, in balancing this individual's privacy interests against the interest served by

5    disclosure of any possible negative impact for this person in his/her employment as a result of

6    providing the declaration, has determined that the balance weighs in favor of disclosure.  The

7    motion as to Int. # 22 will be granted.

8           In Int. # 25, plaintiff focuses on a putative assertion by CSPS Vector Control that

9    "[t]wo rodents left alone for six months breeds two to four hundred rodents...," asking defendant

10   Walker how, based on such a representation, he could "imply that rodents were quickly

11   eliminated..." MTC2, p. 18.  The defendant's response to this question after posing objections,

12   in addition, inter alia, to noting that he had no knowledge to determine the accuracy of such an

13   assertion as to the rodent breeding cycle, states flatly that he "did not imply that rodents were

14   quickly eliminated..." but only that "the investigation into the inmate grievances complaining of

15   unsanitary conditions at SAC revealed that Vector Control took aggressive corrective measures

16   to quickly eliminate the presence of rodents in the main kitchen." MTC2, p. 19.  Defendant's

17   response is not quite accurate, the statement included in the relevant portion of the pertinent

18   second level partial grant appeal response over this defendant's apparent signature is:

19           My inquiry of your complaint reveals that rodents have been a
             problem recently due to the heavy rains in the area.  However,
20           SAC's Vector Control has aggressively responded to this problem
             and quickly eliminated the rodents.
21

22   Complaint, Exh. E, p. 48.  Thus, in fact, it would appear that plaintiff's reference to this

23   defendant's mere implication of the quick elimination of rodents is mild.  The appeal response

24   appears to definitively assert the quick elimination of the rodents due to a claimed aggressive

25   response on the part of Vector Control.  Plaintiff may in future contrast the language of the

26   appeal response to the language of the defendant in response to this interrogatory in a fashion that

1  may undermine the defendant's credibility in his response herein.  However, plaintiff's

2  interrogatory is not particularly well-framed, and the court sees no point in requiring any further

3  response to this question.  The court will deny the motion to Int. # 25.

4                              *Defendant Haythorne*

5             Plaintiff, as noted, seeks a "complete and full response" to his first set of

6  interrogatories numbered 7, 8, 9, 15, 17, 20, 22, 23 and 24.  MTC2, p. 1 and Exh. B.  With regard

7  to plaintiff's Int. # 7, to defendant Haythorne whether, if a pest control expert offered testimony

8  at trial that two rats left undisturbed could breed two to four hundred rats in a six-month period,

9  this defendant would "contend such is farfetched," after interposing objections that the question,

10  among other things, lacks foundation, calls for speculation, calls for a scientific opinion

11  defendant is not qualified to give and is an incomplete, improper hypothetical, this defendant

12  goes on to state that he lacks sufficient information, knowledge or belief to answer the

13  interrogatory.  MTC2, pp. 25-26.  As this is the defendant's verified response, should this

14  defendant challenge any such hypothetical testimony, plaintiff may use the response that he lacks

15  adequate knowledge, etc., to seek to impeach him.  However, the court cannot compel a further

16  response.  The motion as to this Int. # 7 is denied.

17             Int. #8:

18             Please explain why you refuse to accept responsibility for the
             issues raised by this lawsuit by agreement to settle dispute [sic].
19
             Response
20             Responding party objects to this interrogatory on the grounds it is
             unintelligible in its entirety, lacks foundation, and calls for
21             speculation, overbroad, vague as to the meaning of
             "communications, meetings, or reports" and "rodent/rat activity,"
22             and lacks foundation.  Without waiving these objections, based on
             responding party's investigation and knowledge, plaintiff's
23             allegations are false or unsubstantiated.

24  MTC2, p. 26.  In this interrogatory, the defendant appears to be referencing another question as

25  the quoted portions of the response do not correspond with the inquiry.  However, because the

26  interrogatory is decidedly improper as a party does not have to answer why he will not settle a

1   lawsuit, the motion as to Int. # 8 will be denied.

2         Int. # 9:

3         Please explain and provide all knowledge you have as to how
    rodents/rats came to exist in the main kitchen at CSPS.
4
          Response
5
          Responding party objects to this interrogatory on the grounds it is
6   overbroad, is vague as to the meaning of "how rodents/rats came to
    exist in the main kitchen," and lacks foundation.  Without waiving
7   these objections, and limiting his response to 2005 and 2006 as
    alleged in the complaint, responding party believes that the
8   appearance of rodents occurred as a result of heavy rains during the
    winter of 2005 to 2006.
9

10  MTC2, p. 26.  While it is true that the allegations necessarily center on 2005 and 2006, which

11  was primarily the time during which plaintiff was at CSPS, the defendant's response should be

12  more forthcoming.  Within his complaint (see above), plaintiff concedes that he did not arrive at

13  CSPS until December 7, 2004, but he claims that defendants Haythorne, Hague, Rodriguez,

14  Ruller and Arndt had been made personally aware, through "dozens of inmate complaints," of

15  unsanitary food conditions and handling by prison staff since January 9, 2003, about the

16  rat/rodent nesting and mating in the main kitchen.  If rodents were in evidence prior to 2005,

17  such information could be relevant for purposes of this litigation.  Defendant Haythorne must

18  supplement his response, within 14 days, to attest to whether or not he/she has any knowledge,

19  information or belief as to whether or not there were rats/rodents in the main kitchen prior to the

20  winter of 2005-2006, and if so, to what degree and in what amount they were present and where

21  they came from.  The motion to compel as to Int. # 9 is granted.

22        In Int. # 15, plaintiff asks whether using dead rodents to attract/catch live rodents

23  in sticky traps in the food service area would violate Health and Safety standards.  MTC2, p. 6.

24  By his motion, plaintiff does not make clear how this question has any foundation and

25  responding party denies knowledge of any such "purported practice."  Id.  The motion will be

26  denied as to Int. # 15.

In Int. # 17, plaintiff asks whether there currently are rodents in the CSPS main kitchen, and responding party asserts that the question is overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and, in addition, lacks foundation, and calls for speculation.  MTC2, p. 29.  The court disagrees that evidence of the on-going presence of rodents in the CSPS main kitchen is irrelevant and finds that the substantive portion of this response provided after asserting that the objections are not waived, that this defendant lacks sufficient information, knowledge or belief to respond is not sufficient.  Defendant must supplement the response, within 14 days, to, at a minimum, explain why he/she has no information as to this question.  The motion as to Int. # 17 is granted.

In Int. # 20, when plaintiff asks this defendant whether he/she is aware of food "tainted with rodent activity" from the CSPS main kitchen had been served to inmates, defendant, after interposing objections, provided the substantive response that food "which had evidence of being contaminated or suspected of being contaminated, whether by rodents or spoilage, was immediately discarded and never fed to the inmate population.  MTC2, p. 30. Plaintiff may disagree with this response, but this is the defendant's response under penalty of perjury.  Plaintiff might seek to impeach this defendant with the response at trial, but he provides no basis for the court to compel a further response.  The motion as to Int. # 20 is denied.

As to Int. nos. 22, 23 and 24, this defendant states that he/she "lacks sufficient knowledge, information or belief to answer" each of these interrogatories, that ask, respectively, to the defendant's knowledge, how a CSPS inmate could prove he suffered food poisoning as a result of eating food prepared in the CSPS main kitchen, how much it would cost to fumigate the CSPS main kitchen and whether or not CSPS pest control keeps count of rodents caught or trapped in the main kitchen.  The only interrogatory that merits a further response is # 24; it would appear to be a relatively simple task for this defendant to confirm whether or not CSPS pest control keeps, or has kept, a count of rodents caught in the CSPS main kitchen, and the defendant should supplement the response to this inquiry.  The motion as to Int. nos. 22 and 23 is

denied; as to Int. # 24, the motion to compel is granted, and a supplemented response due within 14 days.

*Defendant Leiber*

As to defendant Leiber, plaintiff identifies the following responses to his first set of interrogatories directed to this defendant numbered 4, 7, 8, 9, 10, 16, 21, 22, 23 and 24. MTC2, p. 1 and Exh. C.  With respect to Int. # 4, wherein plaintiff asks this defendant for "all knowledge" of what actions, if any, she took to address the issue of "tray stacking" (an issue that was evidently addressed, by cross-reference to another interrogatory) at a July 13, 2006 C-Facility Men's Advisory Council meeting at CSPS, the defendant states in the substantive portion of her response that she inquired of defendant Hague about the specifics of any such tray-stacking but Hague could not provide specifics.  Defendant Leiber ends by saying that she "reminded pantry staff not to stack food."  MTC2, p. 38.  If defendant Leiber has more specific information as to when and what form her reminder to pantry staff took, i.e., whether it was in the form of a memorandum and/or telling pantry staff directly to avoid tray-stacking, she should provide that information to the plaintiff within 14 days.  As modified, the motion to compel as to Int. # 4 is granted.

In Int. # 7, plaintiff references group appeal log no. SAC-06-00566, and again not including it within his motion, asking whether it was in fact true that CSPS vector control "quickly eliminated" rodents from the C-Facility main kitchen, a reference to defendant Walker's second level appeal response.  Defendant Leiber, an official and individual capacity defendant, according to the complaint, is a correctional captain in charge of C-Facility operations (Complaint, p. 3).  In his motion, plaintiff objects to this defendant's objections based on confidentiality or privilege under state law without providing an affidavit (MTC2, p. 5-6) , while the defendant argues that no such affidavit was necessary as no information was withheld on the basis of the official information privilege.  Opp2, p. 3.  Defendant is incorrect on this point because to invoke the privilege, as previously observed, procedural requirements must be met

and having failed to meet those requirements, the objection on that basis has been waived. Defendant nevertheless does provide a substantive response and warrants that no information was withheld on the basis of the privilege.  However, the substantive response, that she "lacks sufficient knowledge, information, or belief to answer" the interrogatory, in light of her position and the official capacity in which she is also sued, appears deficient.  It would appear that this party could determine the accuracy of a representation that rats had been "quickly eliminated" in response to the appeal in the facility over which she has, or had, charge.  The motion as to Int. # 7 is granted, and defendant Leiber has 14 days to provide a further response.

As to Int. # 8, this defendant disclaims sufficient knowledge, information or belief to respond as to whether or not rodents "have been a problem recently due to heavy rains in the area," in accordance with defendant Walker's second level appeal responses.  MTC2, p. 39. Plaintiff made both responding to the question, as well as ruling on the motion more difficult, because he once again failed to provide the appeal responses referenced with the motion (and evidently failed to do so with the interrogatories).  On the other hand, this defendant's assertion of a lack of information to respond to this interrogatory does not appear adequate and the invocation of privilege is not well-taken for the same reasons as the response to the prior interrogatory were not.  In Int. # 9, Leiber states she has no knowledge as to whether or not rodents currently live in or access the CSPS main kitchen.  If this defendant is still the C-facility captain, this does not appear to be a sufficient response; if she is not in a position to know at this time, she should so clarify.  The motion as to Int. nos. 8, and 9 is granted and the defendant has 14 days to supplement the responses.

In Int. # 10, plaintiff asks this defendant to explain all/any of her efforts to address "verminous conditions in the CSPS main kitchen while captain over C-Facility."  MTC2, p. 40. The defendant seeks unnecessarily to limit the response in time and also avers that she had no knowledge of the presence of rodents in the main kitchen until she received notice of the instant lawsuit and that of a related case.  Id.  The defendant must supplement her response within 14

1    days to inform the plaintiff whether or not she in any manner addressed the rodent issue in the

2    CSPS main kitchen in her capacity as C-Facility captain, and, if so, what form any such efforts

3    took.  The motion as to Int. # 10 is granted.

4            As to Int. # 16, plaintiff does not adequately demonstrate how defendant's answer

5    about the differences between CSCP's C and B facilities is inadequate, and the motion to compel

6    as to this substantive response is denied.  The same applies to Int. # 21, wherein plaintiff asks

7    about the decision to re-house him (relating it to an appeal he does not attach) on August 11,

8    2006 "to protect the integrity of the investigation."  Plaintiff may not agree with the response, in

9    which defendant Leiber references a prior lawsuit of plaintiff's (CIV-S-06-1373, subsequently

10   dismissed for failure to exhaust administrative remedies, previously referenced) and plaintiff's

11   apparent grievances against C-yard staff, which were being investigated as the basis for his being

12   transferred from C to B yards, and that the transfer was done to protect the integrity of the

13   ensuing investigation(s) and plaintiff's constitutional rights, but that is this defendant's

14   substantive response, and the court will not require any further response.  The motion as to Int. #

15   21 is denied.

16           In Int. # 22, this defendant provided a substantive affirmative response to

17   plaintiff's question, concerning whether the defendant states under oath that her claim regarding

18   "protecting the integrity of the investigation" apparently in response to a grievance and the

19   reasons referenced in a separate chrono were the same, again referencing documents not attached

20   to this motion, nor evidently to the interrogatory when served, and which the court cannot locate.

21   MTC2, p. 45.   The court will require nothing further as to this question.  The motion as to Int. #

22   22 is denied.

23           The court agrees with the defendant that Int. # 23 essentially repeats # 21, and in

24   any event, the defendant has what appears to be an adequate substantive response (MTC2, p. 46),

25   and the motion will be denied as to Int. # 23.  With respect to Int. # 24, concerning the level of

26   knowledge this defendant might have had regarding the "any adverse effect on imposed on

plaintiff's mental stability immediately following" this defendant's August 11, 2006, decision to re-house plaintiff in B-Facility at CSPS, this defendant states that she "lacks sufficient knowledge, information, or belief to answer this interrogatory."  MTC2, p. 46.  Plaintiff provides no specific basis in his motion to refute such an assertion or to demonstrate how it is defective. The motion as to Int. # 24 is denied.

*Defendant Hague*

Plaintiff seeks further responses to his nos. 5, 9, 12, 13, 14, 23 and 25 of his first set of interrogatories to this defendant.  MTC2, pp. 1-2 and Exh. D.  According to plaintiff, as noted above, defendant Hague is the CSPS assistant food manager responsible for food preparation and service standards at that facility.  Complaint, p. 4.  He has also described her as at some point being a supervising cook II.  See above.

Plaintiff does not make clear how his Int. # 5 to this defendant merits any further response.  It is not clear to the court what plaintiff is asking when he refers to "restaurant management serv-safe," and what the expectations are in that context regarding "rodent existence in the culinary place."  MTC2, p. 53.  Nevertheless, this defendant responds, after posing objections based on vagueness, overbreadth and lack of foundation, "contact vector control so immediate corrective action is taken, and ensure contaminated food is not served."  Id. Since plaintiff does not indicate how the substantive portion of the response is deficient, the motion as to this interrogatory (# 5) will be denied.

In Int. # 9, plaintiff asks this defendant to share her knowledge as to the first time he/she contacted vector control about a rodent problem or evidence of rodents at CSPS.  MTC2, p. 54.  This defendant indicates that she "does not recall."  Id.  Among the RFPs, plaintiff propounded upon this defendant (see first motion to compel), was a request for (RFP 11) "documents which would mention, discuss or verify the requests made to the CSPS vector control[] to address rodent/rat issues in the main kitchen at CSPS."  MTC, p. 55.  Defendant provided documentation responsive to that request.  No further response to this interrogatory will

1   be required.  The motion as to Int. # 9 is denied.

2           In response to Int. # 12, which asks whether a paragraph constituted an admission

3   by this defendant, referencing an exhibit not included within this motion which evidently

4   memorialized a July 13, 2006, meeting, wherein tray-stacking was addressed.  The memo

5   referenced is apparently the one the court has located as Exh. Q to the complaint.  In that memo,

6   apparently drafted as minutes by the C-Facility Men's Advisory Council of a meeting with

7   various staff, including this defendant, the defendant is noted as having "readily admitted to

8   having seen trays 'stacked herself....'"  Complaint, Exh. Q, p. 99.  In response to the

9   interrogatory, however, defendant Hague states that she "has no recollection of the meeting...."

10  MTC2, p. 55.  Defendant Hague has verified her responses.  Plaintiff may attempt to impeach or

11  undermine this defendant with the memo if it is deemed admissible for that purpose, but the court

12  cannot compel a further response.  The motion as to Int. # 12 is denied.

13          As to Int. # 13, which has as its subject the same meeting, plaintiff asks defendant

14  Hague what she knew about the tray-stacking which the minutes indicate that she witnessed.

15  MTC2, p. 56.  In once again responding that she does not recall the meeting, defendant does

16  evade the essence of the question, which is to describe the instances of tray-stacking witnessed

17  and how she reacted.  Whether or not she recalls the meeting, this defendant may have witnessed

18  tray-stacking and may recall having done so.  In a supplemental response, within 14 days,

19  defendant Hague must respond more directly to the question.  The motion is granted as to Int. #

20  13.

21          Similarly, in Int. #14, referencing once again the July 13, 2006, meeting, plaintiff

22  asks the defendant who the staff member was, as recorded in the minutes, who told her tray-

23  stacking would occur again as soon as she left.  Defendant again claims not to recall the meeting,

24  but again that is irrelevant to answering the question whether or not she can recall anyone ever

25  telling her what is set forth therein about the tray-stacking.  The motion as to Int. # 14 is granted

26  and plaintiff must supply a supplemental or amended response within 14 days.

1    As to Int. # 23, plaintiff's question regarding this defendant's hypothetical

2    dismissal in exchange for her being a material witness inappropriately seeks a legal conclusion

3    from this defendant.  The motion as to Int. # 23 is denied.

4    In Int. # 25, regarding when this defendant became aware of this lawsuit in

5    relation to the filing of an RVR not attached to this motion, but evidently served with the

6    interrogatories in this instance, the defendant has provided a complete substantive response and

7    no further response will be compelled.  The motion as to Int. # 25 will be denied.

8    *Defendant Kelly*

9    Plaintiff moves for further responses to his first set of interrogatories, nos. 8, 9,

10   11, 12, 13, 15, 16, 17, 18, 21, 22, and 23, directed to defendant Kelly.  MTC2, p. 2 and Exh. E.

11   Plaintiff describes defendant Kelly as the CSPS Health Care Manager.  Complaint, p. 3.

12   In Int. # 8, plaintiff asks for a response by defendant Kelly to his question

13   regarding her knowledge of the basis/reason for the medical treatment plaintiff was provided on

14   Feb. 17, 2006, by Dr. Duc.  MTC2, p. 68.  Plaintiff does not attach the exhibit he references to

15   the motion.  Id.  Plaintiff might be referencing Exh. F, p. 62, attached to his complaint, but the

16   copy of the progress notes is virtually illegible.  The defendant objects, inter alia, that the

17   question calls for a medical opinion she is not qualified to give, that the document speaks for

18   itself, and that it is an incomplete/improper hypothetical, and without waiving objections, she

19   goes on to state that she lacks sufficient knowledge, information and belief to respond.

20   Defendant Kelly signs her verification with the designation that she has a Ph.D.  As this

21   defendant is evidently not a physician,[15] the court sees no merit to plaintiff's motion as to this

22   interrogatory.  The motion will be denied as to Int. # 8.

23   In Int. # 9, plaintiff asks a hypothetical question as to how many inmate food

24   poisoning cases it would take before this defendant "would admit or declare an outbreak of food

---

[15] In her response to Int. # 24, an interrogatory not at issue, this defendant explicitly states that she is not a medical doctor.

borne illnesses" as "HCM" (or health care manager) at CSPS.  MTC2, p. 68.  After appropriately

posing similar objections as those set forth immediately above, and without waiving them, this

defendant claims that in her capacity as "HCM-A," this defendant states that she "lacks expertise

in the medical field and would have deferred to medical staff to declare an outbreak of food-

borne illnesses."  Id.  Plaintiff does not demonstrate how this response is inadequate.  The motion

as to Int. # 9 will be denied.

In Int. # 11, in response to plaintiff's question as to whether it was her testimony

that her "subordinate," Dr. Duc, had not diagnosed and treated several inmates, as well as

plaintiff, for food poisoning at CSPS in 2006, this defendant states, in the substantive portion of

her response, that she "was never informed by Dr. Duc or any other doctor at SAC that an inmate

had been diagnosed with food poisoning in 2006."  MTC2, p. 69.  This response does not make

clear whether or not this defendant ever conducted any sort of inquiry of Dr. Duc or any other

doctor whether or not inmates at CSPS in 2006 were diagnosed and treated for food poisoning.

The defendant must supplement her response to this inquiry within 14 days to inform plaintiff

whether or not Dr. Duc or any other doctor found food poisoning cases among CSPS in 2006,

within 14 days.  The motion to compel as to # 11, as modified, is granted.

In Int. # 12, plaintiff asks the same question regarding Dr. Bakewell and this

defendant provides the same response as that to Int. # 11.  MTC2, p. 69.  In Int. # 13, plaintiff

asks how she could be unaware of her "subordinates providing medical treatment to inmates at

CSPS in 2006...for food poisoning," to which the defendant provides the same response as to the

two preceding inquiries.  Because a supplemental response to # 11 is being compelled, the

motion as to Int. # 12 and Int. # 13 should be unnecessary and is denied.

In Int. # 15, plaintiff names six inmates, including himself, who he says, along

with unnamed others, were being treated for food poisoning at CSPS in 2006 and asks for the

defendant to explain how her unawareness of this alleged fact does not indicate ineffectiveness

and neglect on the part of the health care manager, i.e., the defendant.  MTC2, p. 71.  In addition,

to objecting, inter alia, that the inquiry lacks foundation, calls for speculation and a medical

opinion she is not qualified to give, this defendant again replies that she was never informed by

medical staff about any inmate being diagnosed with food poisoning in 2006.  Id.  This

argumentative inquiry for which the foundation is not clearly set forth does not merit a further

response, and the motion as to Int. # 15 will be denied.

On the other hand, in a contention interrogatory, # 16, plaintiff follows up with a

question about whether or not the defendant contends the inmates named in # 15 were not

diagnosed with food poisoning.  MTC2, p. 71.  The court finds the defendant's response that she

was never informed by medical staff that those inmates had been diagnosed with food poisoning

in 2006 is not adequate. The motion as to Int. # 16 is granted, and the court will require a

supplemented response within 14 days.

Int. # 17, another contention interrogatory, plaintiff references yet another exhibit

which he does not attach to the motion, asks the defendant if she contends that the

medications/treatment he received from Dr. Duc were not ordered for reasons specified "in the

Medline Plus Drug Information from the Food and Drug Administration...."  MTC2, p. 71.  This

is an awkwardly phrased question which the court is unable to assess without reference to the

medications at issue or the drug information exhibit.  The defendant maintains that she lacks

sufficient knowledge, information or belief to answer the question, which does not appear to be

an inappropriate response.  The motion as to Int. #17 will be denied.

In Int. # 18, plaintiff asks the same question with regard to the medications and

treatment in 2006 provided by Dr. Bakewell, which engendered a similar response.  MTC2, p.

72.  The motion as to Int. # 18 will be denied.

In Int. # 21, plaintiff asks the defendant to:

> Please explain and provide all knowledge you have as to whether a
> doctor unawareness [sic] to [sic] a food poisoning outbreak by
> persons under such doctors [sic] care would constitute adverse
> and/or disciplinary action by the medical board which license [sic]
> doctors.

1  MTC2, p. 73.

2          After interposing appropriate objections to this awkward hypothetical, the

3  defendant indicates that she lacks sufficient knowledge to answer it.  The motion as to Int. # 21

4  will be denied.  The court will also deny the motion as to the similarly framed Int. # 22.

5          In Int. # 23, plaintiff asks whether he and the other inmates were under this

6  defendant's care during the times relevant to this case.  MTC2, p. 73.  In the substantive portion

7  of the response, the defendant describes her duties as HCM-A, which included overseeing the

8  medical department at CSPS, supervising lower ranked medical staff and formulating

9  departmental policies.  Id.  She explicitly states she did not provide medical treatment to inmates.

10  There is no basis to compel a further response.  The motion as to Int. # 23 is denied.

11              _Defendant Rodriguez_

12          Plaintiff seeks further responses to nos. 2, 3, 4, 7 and 19 from defendant

13  Rodriguez to the first set of interrogatories propounded upon him.  MTC2, p. 2 and Exh. F.  As

14  to Int. # 2, wherein plaintiff inquired as to this defendant's training under HACCP with regard to

15  responding to "rodents in the culinary area," defendant Rodriguez has supplemented and

16  expanded his original response to indicate that, inter alia, "HACCP does not include training on

17  how to respond to rodents in areas where food is restored or prepared."  Esquivel Dec., Exh. 7.

18  This defendant further asserts that he has no specific training with respect to responding to

19  rodents' presence and that he contacts vector control when he learns of rodents being where food

20  is stored or prepared.  Id.  The court finds this supplemented response to be complete and will

21  deny the motion as to Int. # 2.

22          The court agrees with the defendant's objections to Int. # 3, wherein he contends,

23  inter alia, that it is vague, lacking in foundation, calls for speculation, and is an incomplete

24  hypothetical, when plaintiff asks Rodriguez to "explain and provide all knowledge you have as to

25  how many inmates at [] CSPS need contact food poisoning before a food-borne outbreak is

26  declared."  MTC2, Exh. F, p. 80.  Without waiving objections, the defendant's response to this

poorly framed interrogatory that he "lacks knowledge information..." to respond, is reasonable. The court will deny the motion as to Int. # 3.

Int. # 4 is similarly poorly framed where plaintiff asks for "all knowledge" defendant has "as to what would constitute a rodent infestation in the CSPS main kitchen." MTC2, Exh. F, p. 80.  After posing and not waiving objections, the defendant once again understandably informs plaintiff he does not have sufficient knowledge or information to answer. Id., at 81.  The motion as to Int. # 4 is denied.

Int. # 7 references a partial grant of an inmate appeal log, which he does not attach to his motion and evidently, pursuant to the objections, did not attach to the interrogatories served on this defendant.  MTC2, Exh. F, pp. 81-82.   Plaintiff asks the defendant to explain what relief he (plaintiff) was afforded in that partial grant.  After interposing well-founded form objections, defendant, while not waiving them, responds that "he does not recall what relief plaintiff was given, if any."  Id., at 82.  While plaintiff may not be satisfied with this response, the court can compel no further response.  The motion as to Int. # 7 will be denied.

Int. # 19, plaintiff asks this defendant for his knowledge "as to all specific areas rats/rodents accessed in the main kitchen at CSPS."  MTC2, Exh. F, p. 85.  The substantive portion of defendant's response states that he knows only of rats/rodents in the bakery area of the main kitchen and cross-references the response to an earlier interrogatory, # 17, wherein defendant states that he recalled seeing evidence of rodent activity in the main kitchen bakery in 2006.  Id.  It is obvious that plaintiff is not satisfied with this response, but it is not enough for plaintiff simply to conclude that all the substantive and verified responses by defendants that he seeks to put at issue are evasive and incomplete, he must set forth a sufficient basis for the court to compel as to a specific response and this he has failed to do.  His contention that various defendants' responses are deficient because there has been no express indication that they exercised diligence to locate responsive information, not going beyond their recollection (MTC2, p. 5) is sufficiently countered by defendants' argument that plaintiff does not cite facts to

1  demonstrate that defendants failed to conduct a reasonable and diligent inquiry in responding,

2  thus failing to meet his burden to show the responses are incomplete and evasive.  Opp2, p. 3.

3  The motion as to Int. # 19 will be denied.

4  　　　　　　　　　　　*Defendant Ruller*

5  　　　　　Plaintiff asks for further responses to defendant Ruller's responses to nos. 12, 13

6  and 25 of the first set of interrogatories directed to this defendant.  MTC2, p. 2 and Exh. G.   The

7  motion as to all of these interrogatories will be denied.  In Int. # 12, plaintiff asks, somewhat

8  inarticulately, whether this defendant contends "that plaintiff has fabricated to the court in this

9  lawsuit regarding verminous conditions in the CSPS main kitchen."  MTC2, p. 96.  In the

10  substantive portion of the verified response, defendant Ruller states that he/she has no knowledge

11  regarding whether or not plaintiff is lying about the conditions.  Id., 97.  This is the defendant's

12  response made under oath.  In any event, the court cannot compel a further response to this

13  argumentative question or to the subsequent response to Int. # 13, wherein plaintiff asks for facts

14  in support of the response to # 12, and defendants states that "no such facts exist."  Id.

15  　　　　　Int. # 25, asks awkwardly whether "[i]t is realistic to believe that two rats/rodents

16  left alone in the CSPS main kitchen for six [] months can breed two to four hundred off-spring."

17  MTC2, p. 100.  After posing well-taken objections, such as that it calls for speculation and is an

18  incomplete hypothetical, defendant goes on to indicate that he/she has no information as to

19  rodent breeding habits.  Id., at 101.  Whether or not, "it is realistic" for this defendant to believe a

20  pair of rodents can quickly breed in the numbers suggested above would not appear to be either

21  relevant or reasonably calculated to lead to the discovery of admissible evidence in this case.

22  The motion to compel as to all three interrogatories at issue, nos. 12, 13 and 25 will be denied.

23  Motion for Leave to Propound Additional Discovery

24  　　　　　Plaintiff asks for leave to propound additional discovery because he has already

25  propounded the maximum number of interrogatories that he is permitted, pursuant to Fed. R.

26  Civ. P. 33(a).  He bases this motion upon his contention that defendants continue to deny a food

1  poisoning outbreak which he contends was acknowledged by two MTA's in appeal log no.

2  SAC–C-06-01460, and he seeks to discover further facts related thereto.  Motion, pp. 1-2.  He

3  appends a copy of the relevant portion of the first level response.  Id., Exh. A.

4          As defendants note in their opposition, plaintiff has already propounded an

5  exhaustive amount of interrogatories, which they number as 214.  Opp., p. 1.  Further, defendants

6  argue that plaintiff has not shown how the additional information sought could not be obtained

7  through other forms of discovery requests "such as the 100 requests for admissions or the 142

8  production requests plaintiff has already propounded upon defendants."  Id.  Defendants also

9  make the point that plaintiff has failed to submit for the court's review the proposed additional

10  discovery that he seeks to propound.  Id., at 2.  Moreover, defendants show proof that plaintiff

11  already knew of the document at issue when he propounded his first set of written discovery on

12  the defendants.  Id., at 3.  Defendants attach to their opposition, as Exhibit 1, plaintiff's set one of

13  requests for admissions directed to defendant Kelly, to which, attached as Exh. A, is a copy of

14  the first level appeal response at issue, log no. SAC–C-06-01460.  These requests were served,

15  according to the proof of service, on January 17, 2009.  In a reply, plaintiff asserts that he had

16  exhausted the number of interrogatories he could propound absent leave to proceed with

17  additional interrogatories as of October, 2008, but that he did not know about the appeal

18  grievance at issue until afterward.  Reply, p. 2.  In addition, plaintiff points to responses at issue

19  in certain interrogatories in his second motion to compel as proof that defendants therein were

20  falsely denying any outbreak of food-borne bacterial infection before plaintiff obtained the

21  grievance response.  Id., at 2-3.

22          Nonetheless, plaintiff makes a wholly insufficient showing of why he would need

23  to propound additional interrogatories at this point related to the inmate grievance he has

24  identified.  Even if plaintiff did not have knowledge of the grievance before he fashioned his

25  interrogatories, he does appear to have had knowledge of the appeal response for some period of

26  time; thus, defendants are correct that plaintiff has or had the means to acquire further

information related to this grievance response by other discovery devices.  Moreover, the court has already addressed herein the issue of this particular appeal, which the court located in a related case (see above), and based upon which, the undersigned has ordered supplemental responses with respect to plaintiff's first motion to compel.  This motion will be denied.  No sanctions will be imposed as to either motion to compel.

Accordingly, IT IS ORDERED that:

1.  Plaintiff must show good cause, within 21 days, why the unserved defendant Malfi should not be dismissed from this action;

2.  Plaintiff's first motion to compel further responses/production to requests for production (RFP), filed on 3/13/09 (# 35), is granted in part and denied in part, as follows:

a) for defendant Walker, set one: granted, as modified, as to RFP nos. 1, 4, 5, 6, 8, 9, 10; denied as to RFP 3;

b) for defendant Walker, set two: granted, as modified, as to RFP nos. 6, 7, 8, 9, 10, 11, 12, 13, 15; denied as to RFP nos. 1, 3, 4, 5, 14;

c) for defendant Haythorne, set one: denied as to all requests, i.e., RFP nos. 3, 4, 6, 7, 9-13, 15-19, 21-23, 25;

d) for defendant Leiber, set one: granted, as modified, as to RFP nos. 19-22; denied as to RFP nos. 3-8, 15, 16, 18, 23-25;

e) for defendant Hague, set one: granted, as modified, as to RFP nos. 7, 8, 9, 13, 17; denied as to RFP nos. 3, 6, 11, 12, 16, 18-20, 21-22, 23-25;

f) for defendant Ruller, set one: denied as to all requests, RFP nos. 1-25.

3.  Plaintiff's second motion to compel further responses to the first set of his interrogatories, filed on 3/20/09 (# 36), is granted in part and denied in part as to each defendant, as follows:

a) for defendant Walker, granted as to Int. # 8, # 9, # 22; denied as to Int. # 3, # 15, # 16, # 25;

56

b) for defendant Haythorne, granted as to Int. # 9, # 17, # 24; denied as to Int. # 7, # 8, # 15, # 20, # 22, # 23;

c) for defendant Leiber, granted as to Int. # 4 (as modified), # 7, # 8, # 9, # 10; denied as to Int. # 16, # 21, # 22, # 23, # 24;

d) for defendant Hague, granted as to Int. # 13, # 14 ; denied as to Int. # 5, # 9, # 12, # 23, # 25;

e) for defendant Kelly, granted as to Int. # 11 (as modified), # 16; denied as to Int. # 8, # 9, # 12, # 13, # 15 , # 17, # 18, # 21, # 22, # 23;

f) for defendant Rodriguez, denied as to all interrogatories at issue, that is, denied as to Int. # 2, # 3, # 4, # 7, # 19;

g) for defendant Ruller, denied as to all interrogatories at issue, that is, denied as to Int. # 12, # 13, # 25.

4. **In addition, to the extent that defendants have withheld any information based on the qualified official information privilege with regard to the discovery requests at issue, which privilege was invoked without compliance with the procedural requisites, and in which any objection invoked on that basis is therefore waived, defendants must supplement all responses to include any information withheld on that basis within 14 days**

5. All supplemental/amended discovery responses must be served upon plaintiff, within 14 days of the date of this order, and proof of service thereof must be filed in this court within the same deadline.

6. Plaintiff's motion for leave to file a second amended complaint, filed on 4/03/09 (# 40), is denied; and

7. Plaintiff's motion for leave to propound additional discovery requests, filed on 4/09/09 (# 41) is denied.

DATED: 12/21/09                               /s/ Gregory G. Hollows

GGH:009/will2385.mta+                         _____
                                              UNITED STATES MAGISTRATE JUDGE